LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

9 pages

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>JOHN D. REYNEN and JUDITH M. REYNEN,<br><br>Debtors. | Case No.: 08-25145<br><br>Chapter 11<br><br>MLG-022 |
| In re:<br><br>CHRISTO BARDIS and SARA BARDIS,<br><br>Debtors. | Case No.: 08-34878<br><br>Chapter 11<br><br>MHK-009 |

**EXHIBIT D TO PROPOSED DISCLOSURE STATEMENT
FOR DEBTORS' JOINT PLAN OF REORGANIZATION**

**(Projections of Plan Distributions and Liquidation Alternative in Bardis Estate)**

## Christo Bardis and Sara Bardis
## Claims Recovery Analysis of the
## Chapter 11 Plan versus Chapter 7 Liquidation
## Assumes June 30, 2009 Effective Date
(Rounded to thousands)

| | Projected Chapter 11 Plan Distributions | | Estimated Recovery % | | Projected Chapter 7 Distributions | | Estimated Recovery % | | Notes |
|---|---|---|---|---|---|---|---|---|---|
| | Low | High | Low | High | Low | High | Low | High | |
| **I. Analysis of Net Proceeds** | | | | | | | | | |
| **Assets** | | | | | **Assets** | | | | |
| Cash | $ (1,318,000) | $ (1,198,000) | N/A | N/A | $ (1,318,000) | $ (1,198,000) | N/A | N/A | [1] |
| Tax Refunds | 24,671,000 | 32,895,000 | 75.0% | 100.0% | 10,500,000 | 15,000,000 | 31.9% | 45.6% | [2] |
| Assets Held for Sale - Gross Value | 1,556,000 | 2,075,000 | 75.0% | 100.0% | 1,247,000 | 1,649,000 | 60.1% | 79.5% | [3] |
| Buildco Residual Funds | 0 | 142,000 | 0.0% | N/A | 0 | 100,000 | 0.0% | 70.4% | [4] |
| Causes of Action Recoveries | 10,000 | 3,000,000 | 0.0% | N/A | 10,000 | 1,500,000 | 0.0% | 0.0% | [5] |
| | 24,919,000 | 36,914,000 | 67.5% | 100.0% | 10,439,000 | 17,051,000 | 28.3% | 46.2% | |
| **Post-Effective Date Admin. Expenses** | | | | | **Admin. Expenses After Conversion to Chapter 7** | | | | |
| Sale Period Compensation | 315,000 | 315,000 | | | N/A | N/A | | | [6] |
| Step Incentive Payments | 769,000 | 1,481,000 | | | N/A | N/A | | | [7] |
| Tax Refund Incentives | 606,000 | 1,511,000 | | | N/A | N/A | | | [8] |
| Assets Held for Sale, Carrying Costs | 10,000 | 10,000 | | | 10,000 | 10,000 | | | [9] |
| Assets Held for Sale, Selling Costs | 156,000 | 208,000 | | | 125,000 | 165,000 | | | [10] |
| U.S. Trustee Fees | 31,000 | 31,000 | | | N/A | N/A | | | [11] |
| Interest Income | (130,000) | (179,000) | | | (49,000) | (76,000) | | | [12] |
| | 1,757,000 | 3,377,000 | | | 86,000 | 99,000 | | | |
| **Net Proceeds Available for Distribution** | $ 23,162,000 | $ 33,537,000 | | | $ 10,353,000 | $ 16,952,000 | | | |
| **II. Claims Recovery Analysis** | | | | | | | | | |
| **Secured Creditors** | | | | | **Secured Creditors** | | | | |
| Real Property Taxes | $ - | $ - | | | $ - | $ - | | | [13] |
| Secured Claims on Real Property | 420,000 | 420,000 | | | 420,000 | 420,000 | | | [14] |
| Secured Claims on Reynen Excluded Assets | (420,000) | (420,000) | | | (420,000) | (420,000) | | | [15] |
| | 0 | 0 | N/A | N/A | 0 | 0 | N/A | N/A | |
| Proceeds Available for Distribution | 23,162,000 | 33,537,000 | | | 10,353,000 | 16,952,000 | | | |
| **Chapter 7 Administrative Claims** | | | | | **Chapter 7 Administrative Claims** | | | | |
| Chapter 7 Trustee Fees | N/A | N/A | | | 336,000 | 535,000 | | | [16] |
| Chapter 7 Trustee's Professionals | N/A | N/A | | | 300,000 | 150,000 | | | [17] |
| Contingency Reserve | N/A | N/A | | | 37,000 | 49,000 | | | [18] |
| | 0 | 0 | N/A | N/A | 673,000 | 734,000 | 100.0% | 100.0% | |
| Proceeds Available for Distribution | 23,162,000 | 33,537,000 | | | 9,680,000 | 16,218,000 | | | |
| **Plan Administration Expenses** | | | | | **Plan Administration Expenses** | | | | |
| Plan Professional Fees | 571,000 | 476,000 | | | N/A | N/A | | | [19] |
| | 571,000 | 476,000 | | | 0 | 0 | N/A | N/A | |
| Proceeds Available for Distribution | 22,591,000 | 33,061,000 | | | 9,680,000 | 16,218,000 | | | |
| **Priority Tax Claims** | | | | | **Priority Claims** | | | | |
| Priority Tax Claims | 1,450,000 | 1,450,000 | | | 1,450,000 | 1,450,000 | | | [20] |
| | 1,450,000 | 1,450,000 | 100.0% | 100.0% | 1,450,000 | 1,450,000 | 100.0% | 100.0% | |
| Proceeds Available for Distribution | 21,141,000 | 31,611,000 | | | 8,230,000 | 14,768,000 | | | |
| **Convenience Claims** | | | | | **Convenience Claims** | | | | |
| Convenience Claims | N/A | N/A | | | N/A | N/A | | | [21] |
| | 0 | 0 | N/A | N/A | 0 | 0 | N/A | N/A | |
| Proceeds Available for Distribution | 21,141,000 | 31,611,000 | | | 8,230,000 | 14,768,000 | | | |
| **Unsecured Claims** | | | | | **Unsecured Claims** | | | | |
| Deficiency Reduction Amount | (90,000,000) | (125,000,000) | | | (69,000,000) | (90,000,000) | | | [22] |
| Convenience Claims Reductions | 0 | N/A | | | N/A | N/A | | | [23] |
| Scheduled or Timely Filed Unsecured Claims | 962,600,000 | 738,021,000 | | | 962,600,000 | 738,021,000 | | | [24] |
| Late Filed Unsecured Claims | 7,186,000 | 0 | | | 14,373,000 | 14,373,000 | | | [25] |
| | $879,786,000 | $613,021,000 | 2.4% | 5.2% | $907,973,000 | $662,394,000 | 0.9% | 2.2% | |

**Christo Bardis and Sara Bardis**

**Claims Recovery Analysis of the Chapter 11 Plan versus Chapter 7 Liquidation**

Note 1 - Cash

It is assumed that Bardis will have no material amount of cash, other than the Bardis Estate's tax refunds below, in each of the distribution scenarios for the Chapter 11 Plan and for the Chapter 7 Liquidation as of June 30, 2009. This date represents the projected Effective Date in the Plan scenarios or the date commencing liquidation in the Chapter 7 liquidation scenarios. The negative cash amounts in each of the scenarios represent the amounts of cash expected to be used from the tax refunds to administer the Bardis Estate through June 30, 2009.

Note 2 - Tax Refunds

In December 2008, the Bardis Debtors filed the Bardis Tax Returns with the Internal Revenue Service ("IRS") asserting certain tax refunds. In February 2009, the Bardis Debtors received approximately $32.9 million in tax refunds. The analysis assumes:
- Chapter 11 Plan- High: the Bardis Estate retains 100% of this refund amount.
- Chapter 11 Plan- Low: the Bardis Debtors retains 75% of this refund amount, as a result of an IRS audit, with full involvement by the Bardis Debtors.
- Chapter 7 Liquidation- High: the Bardis Estate retains about $15 million of this refund amount, as a result of an IRS audit, with limited involvement by the Bardis Debtors.
- Chapter 7 Liquidation: Low: the Bardis Debtors retain about $10.5 million of this refund amount, as a result of an IRS audit, with limited involvement by the Bardis Debtors. The amount represents only the estimated ordinary course of business losses associated with the Bardis Tax Returns.

Note 3 - Assets Held for Sale, Gross Value

The principal asset categories of the Bardis Estate expected to be sold or otherwise monetized are described in the Disclosure Statement. This analysis assumes:

- Chapter 11 Plan- High: such assets the sale or monetization of assets at the projected amounts described in the Disclosure Statement.
- Chapter 11 Plan- Low: such assets will be sold or otherwise monetized at 75% of the projected amounts described in the Disclosure Statement, such discount due primarily to potentially unfavorable economic conditions, particularly in light of the real estate markets where the Bardis Debtors' assets are located.

1

- Chapter 7 Liquidation scenarios: such assets will be sold or otherwise monetized at approximately 50% to 67% of the projected amounts described in the Disclosure Statement, due primarily to forced sale conditions of the real properties and partnership interests, coupled with questionable recovery of the notes receivable without the involvement of the Bardis Debtors. Because the Bardis Excluded Assets are not revested in the Bardis Debtors, as provided in the Plan, they are added back in the chapter 7 liquidation scenarios, less exemptions applicable in such liquidation, resulting in an overall discount range of about 60% to 80%.

Note 4 - Buildco Residual Funds

Pursuant to the Plan, and as described more fully in the Disclosure Statement, a principal objective of funding Buildco is to finalize the build-out of certain remaining construction projects. That funding has been shared equally between the Reynen Estate and the Bardis Estate, with the Creditors' Committee's support. The Buildco Residual Funds are the Bardis Estate's share of the expected remaining cash balance upon cessation of Buildco's operations, to be repaid to the Bardis Estate. This analysis assumes:

- Chapter 11 Plan- High: Buildco will finish the build-out of homes as scheduled, and will be able to sell the homes at the forecasted release prices.

- Chapter 11 Plan- Low: Buildco will finish the build-out of homes, but will be unable to accumulate a material ending cash balance, due primarily to one or more of the following reasons: (1) lower than expected release prices; (2) increased selling and/or administrative costs; (3) delayed sales of homes due to market conditions; or (4) payments for accrued but unpaid liabilities.

- Chapter 7 Liquidation- High: Buildco will cease operations as of June 30, 2009, or shortly thereafter, and return all remaining unfinished projects to secured lenders, with a reduced remaining cash balance.

- Chapter 7 Liquidation: Low: Buildco will cease operations as of June 30, 2009, or shortly thereafter, and return all remaining unfinished projects to secured lenders, with no material ending cash balance due primarily to one or more of the following reasons: (1) increased selling and/or administrative costs; or (2) payments for accrued but unpaid liabilities.

Note 5 - Causes of Action Recoveries

Under the Plan, the Plan Agent, with the cooperation of the Bardis Debtors, will investigate and prosecute claims, such as avoidance causes of action, held by the Bardis Estate for the benefit of creditors. In a chapter 7 liquidation, that investigation and prosecution would be undertaken by the chapter 7 trustee, with more limited assistance by the Bardis Debtors. Incremental professional fees relating to the investigation and prosecution of such claims are netted against the amount of recoveries. This analysis assumes:

- Chapter 11 Plan - High: the net amount of $3,000,000 is recovered from such claims (but note, that it is unknown as of April 2009 whether any such causes of action will result in any recoveries for the estate, greater or lesser than that amount).

- Chapter 11 Plan - Low: the net amount of $10,000 is recovered from such claims.

- Chapter 7 Liquidation- High: the lesser amount of $1,500,000 is recovered from such claims, due in part to the Bardis Debtors' more limited involvement in the chapter 7 process.

- Chapter 7 Liquidation: Low: the net amount of $10,000 is recovered from such claims.

## Note 6 - Sale Period Compensation

Under the Plan, the Bardis Debtors will earn Sale Period Compensation, subject to Offsetting Personal Expenses, as described in the Disclosure Statement. This analysis assumes:

- Chapter 11 Plan Scenarios: the $315,000 is paid to the Bardis Debtors as provided by the Plan.

- Chapter 7 Liquidation Scenarios: no Sale Period Compensation is paid.

## Note 7 - Step Incentive Payments

Under the Plan, the Bardis Debtors will earn Step Incentive Payments, based on reductions of unsecured claims, as described in the Disclosure Statement. This analysis assumes:

- Chapter 11 Plan- High: the Bardis Debtors earn a total of about $1.481 million in such incentive payments.

- Chapter 11 Plan- Low: the Bardis Debtors earn a total of about $769,000 in such incentive payments.

- Chapter 7 Liquidation Scenarios: without the Plan, no Step Incentive Payments are made.

## Note 8 - Tax Refund Incentives

Under the Plan, the Bardis Debtors will earn incentive payments from the Plan Agent based upon the amount of Net Refunds retained by the Bardis Estate on account of the Bardis Tax Returns. This analysis assumes the Net Refund results described in Note 2 above, less $397,460 to adjust for the value of the Bardis Excluded Assets.

## Note 9 - Assets Held for Sale, Carrying Costs

The carrying costs for the Bardis Estate's assets held for sale include primarily property taxes, insurance, utilities and secured debt service. This analysis assumes that such carrying costs will continue through October 2009 under either the Plan scenarios and the chapter 7 liquidation

scenarios, and that all such properties will have been eliminated from the Bardis Estate by such time.

Note 10 - Assets Held for Sale. Selling Costs

The selling costs for the Bardis Estate's assets held for sale include primarily real estate brokerage commissions, maintenance and capital expenditures related to maintaining and preparing such assets for sale. This analysis assumes that such costs are equal to 10% of the assets' sale prices, in both the Plan scenarios and the chapter 7 liquidation scenarios.

Note 11 - U.S. Trustee Fees

U.S. Trustee Fees are fees charged by statute, paid to the United States Trustee Program, and calculated based upon disbursements by a chapter 11 estate. This analysis assumes that such fees are paid during the chapter 11 case in accordance with those calculations, based upon revenues assumed and described in other notes herein, and that such fees are not paid in the chapter 7 liquidation scenarios after conversion.

Note 12 - Interest Income

It is assumed that as the net proceeds available for distribution in each of the chapter 11 plan scenarios and chapter 7 liquidation scenarios are monetized, they will generate interest income at an annualized rate of about 1.15%.

Note 13 - Real Property Taxes

Not applicable.

Note 14 - Secured Claims on Real Property

This analysis assumes full payment of secured claims encumbering the Bardis Estate's real property assets held for sale or other monetization, in each of the chapter 11 plan scenarios and the chapter 7 liquidation scenarios.

Note 15 – Secured Claims on Bardis Excluded Assets

This analysis assumes, in accordance with the Plan terms, that secured claims encumbering Bardis Excluded Assets will be paid by the Reorganized Bardises under the Plan, and by the Bardis Estate in a chapter 7 liquidation. Such secured claims affect only the primary residence located in Gold River, CA.

Note 16- Chapter 7 Trustee Fees

Under the Plan, there is no chapter 7 trustee, and hence no chapter 7 trustee fees. In the event of conversion to chapter 7, a trustee would be appointed by the U.S. Trustee to manage the liquidation of the Bardis Estate's assets. This analysis assumes:

- Chapter 11 Plan Scenarios: no chapter 7 trustee fees will be paid.
- Chapter 7 Liquidation Scenarios: chapter 7 trustee fees will be paid in amounts calculated as the maximum amounts set forth in Section 326 of the Bankruptcy Code, based on percentages of the amount of net proceeds available for distribution.

Note 17- Chapter 7 Trustee's Professionals

Under the Plan, there is no chapter 7 trustee, and hence no chapter 7 trustee's professionals' fees. In the event of conversion to chapter 7, the trustee appointed by U.S. Trustee would likely retain professionals to assist in the liquidation of the Bardis Estate's assets. This analysis assumes:

- Chapter 11 Plan Scenarios: no chapter 7 trustee's professionals' fees will be paid.
- Chapter 7 Liquidation - High: the trustee's professionals will be paid $150,000 in fees and expenses.
- Chapter 7 Liquidation - Low: the trustee's professionals will be paid $300,000 in fees and expenses.

Note 18 - Contingency Reserve

This analysis assumes contingency reserves in the chapter 7 liquidation scenarios, attributable primarily to potential unforeseen costs or additional discounts in valuations arising from a forced liquidation, as follows:

- Chapter 11 Plan Scenarios - not applicable.
- Chapter 7 Liquidation - High: 3.0% of the gross value of the Bardis Estate's assets held for sale.
- Chapter 7 Liquidation - Low: 5.0% of the gross value of the Bardis Estate's assets held for sale.

Note 19 - Plan Professional Fees

In the chapter 11 plan scenarios, after the Effective Date, counsel, accountants and financial advisors for the Bardis Debtors, the Plan Committee and the Plan Agent, and the Plan Agent himself, will earn fees for services rendered in implementing the Plan, and will be paid from funds of the Bardis Estate. In the chapter 7 liquidation scenarios, no such fees will be earned or paid. This analysis assumes:

- Chapter 11 Plan - High: post-Effective Date professionals' fees will be paid in the aggregate amount of approximately $476,000.
- Chapter 11 Plan - Low: post-Effective Date professionals' fees will be paid in the greater aggregate amount of approximately $571,000, based on a 20% increase.
- Chapter 7 Liquidation Scenarios: not applicable.

Note 20- Priority Tax Claims

This analysis assumes that Priority Tax Claims, to be paid in full under the Plan as well as in a chapter 7 liquidation (provided that there are sufficient funds), will be paid in equal amounts in each of the chapter 11 Plan scenarios and the chapter 7 liquidation scenarios, and that there are no other Priority Claims.

Note 21 - Convenience Claims

Not Applicable.

Note 22- Deficiency Reduction Amount

As stated in Note 7 above, the Bardis Debtors will be compensated for successful efforts in reducing claims, pursuant to a formula. This analysis assumes that the following claim reductions, from the scheduled or filed amounts, will be achieved:

- Chapter 11 Plan - High: scheduled and filed claims will be reduced by approximately 125 million, with the Bardis Debtors' active involvement.

- Chapter 11 Plan - Low: scheduled and filed claims will be reduced by approximately $90 million, with the Bardis Debtors' active involvement.

- Chapter 7 Liquidation - High: scheduled and filed claims will be reduced by approximately $90 million, without the Bardis Debtors' active involvement.

- Chapter 7 Liquidation - Low: scheduled and filed claims will be reduced by approximately $69 million, without the Bardis Debtors' active involvement.

Note 23- Convenience Claims Reductions

Not applicable.

Note 24- Scheduled or Timely Filed Unsecured Claims

This analysis assumes the starting point for the aggregate amount of all general unsecured claims: for the chapter 11 high and chapter 7 high scenarios is the sum of all claims scheduled as noncontingent, undisputed and liquidated, plus re-classifications of certain claims to Unsecured Claims, and less known post-filing reductions; and for the chapter 11 low and chapter 7 low scenarios is the sum of all claims timely filed with the Bankruptcy Court, plus claims scheduled as noncontingent, undisputed and liquidated but not filed with the Bankruptcy Court, and less known post-filing reductions.

Note 25- Late Filed Unsecured Claims

This analysis assumes that all new claims filed after the claims Bar Dates are included as Allowed Unsecured Claims in both of the chapter 7 scenarios, and 50% of the new claims filed

6

after the claims Bar Dates are included as Allowed Unsecured Claims in the chapter 11 low scenario.