FILED
May 29, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001862584

8 pages

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

In re:

JOHN D. REYNEN and JUDITH M. REYNEN,

Debtors.

Case No.: 08-25145

Chapter 11

MLG-022

In re:

CHRISTO BARDIS and SARA BARDIS,

Debtors.

Case No.: 08-34878

Chapter 11

MHK-009

**EXHIBIT G TO DISCLOSURE STATEMENT FOR
DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION**

**(Claims Analysis)**

EXHIBIT G TO DISCLOSURE STATEMENT
23514/20014

# John D. Reynen and Judith M. Reynen

## Claims Recovery Analysis Under Joint Plan versus Chapter 7 Liquidation

### Note 1 - Cash

It is assumed that cash, other than the Reynen Estate's tax refunds below, will have an equal range of projected balances in each of the distribution scenarios for the Plan and for a chapter 7 liquidation as of June 30, 2009. This date represents the projected Effective Date in the Plan scenarios or the date commencing liquidation in the chapter 7 liquidation scenarios. These amounts are assumed to be 100% collectible.

The projected amounts are assumed to be net of the following principal categories of expenses incurred from the Petition Date through and until June 30, 2009:

1. Buildco funding, of which the Reynen Debtors' allocation represents 50% of the total funding;

2. Gross professional fees and expenses, except those fees associated with the Reynen Tax Returns, and assumes that these fees and expenses are accrued and paid as of June 30, 2009;

3. Real property-related expenses, including property taxes, insurance, utilities and debt-service, and

4. Living expenses for the Reynen Debtors.

### Note 2 - Tax Refunds

In December 2008, the Reynen Debtors filed the Reynen Tax Returns with the Internal Revenue Service ("IRS") asserting certain tax refunds. In February 2009, the Reynen Estate received approximately $24.5 million in tax refunds. The analysis assumes:

- Chapter 11 Plan- High: the Reynen Estate retains 100% of this refund amount.

- Chapter 11 Plan- Low: the Reynen Estate retains 75% of this refund amount, as a result of an IRS audit, with full involvement by the Reynen Debtors.

- Chapter 7 Liquidation- High: the Reynen Estate retains about $10 million of this refund amount, as a result of an IRS audit, with limited involvement by the Reynen Debtors.

- Chapter 7 Liquidation: Low: the Reynen Estate retains about $6.9 million of this refund amount, as a result of an IRS audit, with limited involvement by the Reynen Debtors. The amount represents only the estimated ordinary course of business losses associated with the Reynen Tax Returns.

Note 3 - Assets Held for Sale, Gross Value

The principal asset categories of the Reynen Estate expected to be sold or otherwise monetized are described in the Disclosure Statement. This analysis assumes:

- Chapter 11 Plan- High: such assets will be sold or otherwise monetized at the projected amounts described in the Disclosure Statement.

- Chapter 11 Plan- Low: such assets will be sold or otherwise monetized at 75% of the projected amounts described in the Disclosure Statement, such discount due primarily to potentially unfavorable economic conditions, particularly in light of the real estate markets where the Reynen Debtors' assets are located.

- Chapter 7 Liquidation scenarios: such assets will be sold or otherwise monetized at approximately 50% to 67% of the projected amounts described in the Disclosure Statement, due primarily to forced sale conditions of the real properties and partnership interests, coupled with questionable recovery of the notes receivable without the involvement of the Reynen Debtors. Because the Reynen Excluded Assets are not revested in the Reynen Debtors, as provided in the Plan, they are added back in the chapter 7 liquidation scenarios, less exemptions applicable in such liquidation, resulting in an overall discount range of about 64% to 85%.

Note 4 - Buildco Residual Funds

Pursuant to the Plan, and as described more fully in the Disclosure Statement, a principal objective of funding Buildco is to finalize the build-out of certain remaining construction projects. That funding has been shared equally between the Reynen Estate and the Bardis Estate, with the Creditors' Committee's support. The Buildco Residual Funds are the Reynen Estate's share of the expected remaining cash balance upon cessation of Buildco's operations, to be repaid to the Reynen Estate. This analysis assumes:

- Chapter 11 Plan- High: Buildco will finish the build-out of homes as scheduled, and will be able to sell the homes at the forecasted release prices.

- Chapter 11 Plan- Low: Buildco will finish the build-out of homes, but will be unable to accumulate a material ending cash balance, due primarily to one or more of the following reasons: (1) lower than expected release prices; (2) increased selling and/or administrative costs; (3) delayed sales of homes due to market conditions; or (4) payments for accrued but unpaid liabilities.

- Chapter 7 Liquidation- High: Buildco will cease operations as of June 30, 2009, or shortly thereafter, and return all remaining unfinished projects to secured lenders, with a reduced remaining cash balance.

- Chapter 7 Liquidation: Low: Buildco will cease operations as of June 30, 2009, or shortly thereafter, and return all remaining unfinished projects to secured lenders, with no material ending cash balance due primarily to one or more of the

following reasons: (1) increased selling and/or administrative costs; or (2) payments for accrued but unpaid liabilities.

Note 5 - Causes of Action Recoveries

Under the Plan, the Plan Agent, with the cooperation of the Reynen Debtors, will investigate and prosecute claims, such as avoidance causes of action, held by the Reynen Estate for the benefit of creditors. In a chapter 7 liquidation, that investigation and prosecution would be undertaken by the chapter 7 trustee, with more limited assistance by the Reynen Debtors. Incremental professional fees relating to the investigation and prosecution of such claims are netted against the amount of recoveries. This analysis assumes:

- Chapter 11 Plan - High: the net amount of $100,000 is recovered from such claims (but note, that it is unknown as of April 2009 whether any such causes of action will result in any recoveries for the estate, greater or lesser than that amount).

- Chapter 11 Plan - Low: no amount is recovered from such claims.

- Chapter 7 Liquidation- High: the lesser amount of $50,000 is recovered from such claims, due in part to the Reynen Debtors' more limited involvement in the chapter 7 process.

- Chapter 7 Liquidation: Low: no amount is recovered from such claims.

Note 6 - Sale Period Compensation

Under the Plan, the Reynen Debtors will earn Sale Period Compensation, subject to Offsetting Personal Expenses, as described in the Disclosure Statement. This analysis assumes:

- Chapter 11 Plan Scenarios: the $315,000 is paid to the Reynen Debtors as provided by the Plan.

- Chapter 7 Liquidation Scenarios: no Sale Period Compensation is paid.

Note 7 - Step Incentive Payments

Under the Plan, the Reynen Debtors will earn Step Incentive Payments, based on reductions of unsecured claims, as described in the Disclosure Statement. This analysis assumes:

- Chapter 11 Plan- High: the Reynen Debtors earn a total of about $1.~~481~~ 335 million in such incentive payments.

- Chapter 11 Plan- Low: the Reynen Debtors earn a total of about $769,000 in such incentive payments.

- Chapter 7 Liquidation Scenarios: without the Plan, no Step Incentive Payments are made.

Note 8 - Tax Refund Incentives

Under the Plan, the Reynen Debtors will earn incentive payments from the Plan Agent based upon the amount of Net Refunds retained by the Reynen Estate on account of the Reynen Tax Returns. This analysis assumes the Net Refund results described in Note 2 above.

Note 9 - Assets Held for Sale, Carrying Costs

The carrying costs for the Reynen Estate's assets held for sale include primarily property taxes, insurance, utilities and secured debt service. This analysis assumes that such carrying costs will continue through October 2009 under either the Plan scenarios and the chapter 7 liquidation scenarios, and that all such properties will have been eliminated from the Reynen Estate by such time.

Note 10 - Assets Held for Sale, Selling Costs

The selling costs for the Reynen Estate's assets held for sale include primarily real estate brokerage commissions, maintenance and capital expenditures related to maintaining and preparing such assets for sale. This analysis assumes that such costs are equal to 10% of the assets' sale prices, in both the Plan scenarios and the chapter 7 liquidation scenarios.

Note 11 - U.S. Trustee Fees

U.S. Trustee Fees are fees charged by statute, paid to the United States Trustee Program, and calculated based upon disbursements by a chapter 11 estate. This analysis assumes that such fees are paid during the chapter 11 case in accordance with those calculations, based upon revenues assumed and described in other notes herein, and that such fees are not paid in the chapter 7 liquidation scenarios after conversion.

Note 12 - Interest Income

It is assumed that as the net proceeds available for distribution in each of the chapter 11 plan scenarios and chapter 7 liquidation scenarios are monetized, they will generate interest income at an annualized rate of about 1.15%.

Note 13 - Real Property Taxes

This analysis assumes payment of real property taxes accrued and accruing on account of the Reynen Estate's real estate assets held for sale, in equal amounts in each of the chapter 11 plan scenarios and the chapter 7 liquidation scenarios.

Note 14 - Secured Claims on Real Property

This analysis assumes full payment of secured claims encumbering the Reynen Estate's real property assets held for sale or other monetization, in each of the chapter 11 plan scenarios and the chapter 7 liquidation scenarios.

Note 15 – Secured Claims on Reynen Excluded Assets

This analysis assumes, in accordance with the Plan terms, that secured claims encumbering Reynen Excluded Assets will be paid by the Reorganized Reynens under the Plan, and by the Reynen Estate in a chapter 7 liquidation. Such secured claims affect the following Reynen Excluded Assets: (1) 2400 East Tiffany Lane residence; (2) the Pennsylvania Farm; and (3) the Mercedes Vehicle.

Note 16- Chapter 7 Trustee Fees

Under the Plan, there is no chapter 7 trustee, and hence no chapter 7 trustee fees. In the event of conversion to chapter 7, a trustee would be appointed by the U.S. Trustee to manage the liquidation of the Reynen Estate's assets. This analysis assumes:

- Chapter 11 Plan Scenarios: no chapter 7 trustee fees will be paid.
- Chapter 7 Liquidation Scenarios: chapter 7 trustee fees will be paid in amounts calculated as the maximum amounts set forth in Section 326 of the Bankruptcy Code, based on percentages of the amount of net proceeds available for distribution.

Note 17- Chapter 7 Trustee's Professionals

Under the Plan, there is no chapter 7 trustee, and hence no chapter 7 trustee's professionals' fees. In the event of conversion to chapter 7, the trustee appointed by U.S. Trustee would likely retain professionals to assist in the liquidation of the Reynen Estate's assets. This analysis assumes:

- Chapter 11 Plan Scenarios: no chapter 7 trustee's professionals' fees will be paid.
- Chapter 7 Liquidation - High: the trustee's professionals will be paid $250,000 in fees and expenses.
- Chapter 7 Liquidation - Low: the trustee's professionals will be paid $500,000 in fees and expenses.

Note 18 - Contingency Reserve

This analysis assumes contingency reserves in the chapter 7 liquidation scenarios, attributable primarily to potential unforeseen costs or additional discounts in valuations arising from a forced liquidation, as follows:

- Chapter 11 Plan Scenarios - not applicable.

- Chapter 7 Liquidation - High: 3.0% of the gross value of the Reynen Estate's assets held for sale.
- Chapter 7 Liquidation - Low: 5.0% of the gross value of the Reynen Estate's assets held for sale.

Note 19 - Plan Professional Fees

In the chapter 11 plan scenarios, after the Effective Date, counsel, accountants and financial advisors for the Reynen Debtors, the Plan Committee and the Plan Agent, and the Plan Agent himself, will earn fees for services rendered in implementing the Plan, and will be paid from funds of the Reynen Estate. In the chapter 7 liquidation scenarios, no such fees will be earned or paid. This analysis assumes:

- Chapter 11 Plan - High: post-Effective Date professionals' fees will be paid in the aggregate amount of approximately $791,000.
- Chapter 11 Plan - Low: post-Effective Date professionals' fees will be paid in the greater aggregate amount of approximately $949,000, based on a 20% increase.
- Chapter 7 Liquidation Scenarios: not applicable.

Note 20- Priority Tax Claims

This analysis assumes that Priority Tax Claims, to be paid in full under the Plan as well as in a chapter 7 liquidation (provided that there are sufficient funds), will be paid in equal amounts in each of the chapter 11 Plan scenarios and the chapter 7 liquidation scenarios, and that there are no other Priority Claims.

Note 21 - Convenience Claims

Under the Plan, Convenience Claims (consisting of any Allowed Unsecured Claims of $2,500 or less, and those claims in higher amounts reduced to $2,500 by their holders), will receive payment equal to 5.0% of allowed amounts. This analysis assumes that each holder of the 35 Convenience Claims is paid in such manner in the chapter 11 Plan Scenarios, and that no holder of a greater claim "opts in" to such treatment. The claim treatment is inapplicable in the chapter 7 liquidation scenarios.

Note 22- Deficiency Reduction Amount

As stated in Note 7 above, the Reynen Debtors will be compensated for successful efforts in reducing claims, pursuant to a formula. This analysis assumes that the following claim reductions, from the scheduled or filed amounts, will be achieved:

- Chapter 11 Plan - High: scheduled and filed claims will be reduced by approximately $125 million, with the Reynen Debtors' active involvement.

- Chapter 11 Plan - Low:  scheduled and filed claims will be reduced by approximately $90 million, with the Reynen Debtors' active involvement.
- Chapter 7 Liquidation - High:  scheduled and filed claims will be reduced by approximately $90 million, without the Reynen Debtors' active involvement.
- Chapter 7 Liquidation - Low:  scheduled and filed claims will be reduced by approximately $69 million, without the Reynen Debtors' active involvement.

Note 23- Convenience Claims Reductions

As stated in Note 21, 35 Convenience Claims are assumed to be paid under the Plan, with a 5.0% distribution.  This analysis assumes therefore that the aggregate amount of all general unsecured claims will be reduced by the aggregate amount of those Convenience Claims in the chapter 11 Plan scenarios, but not in the chapter 7 liquidation scenarios.

Note 24- Scheduled or Timely Filed Unsecured Claims

This analysis assumes the starting point for the aggregate amount of all general unsecured claims: for the chapter 11 high and chapter 7 high scenarios is the sum of all claims scheduled as noncontingent, undisputed and liquidated, plus re-classifications of certain claims to Unsecured Claims, and less known post-filing reductions; and for the chapter 11 low and chapter 7 low scenarios is the sum of all claims timely filed with the Bankruptcy Court, plus claims scheduled as noncontingent, undisputed and liquidated but not filed with the Bankruptcy Court, and less known post-filing reductions.

Note 25- Late Filed Unsecured Claims

This analysis assumes that all new claims filed after the claims Bar Dates are included as Allowed Unsecured Claims in both of the chapter 7 scenarios, and 50% of the new claims filed after the claims Bar Dates are included as Allowed Unsecured Claims in the chapter 11 low scenario.