FILED

July 31, 2009

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001993925

**75** pages

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>JOHN D. REYNEN and JUDITH M. REYNEN,<br><br>　　　　　　　Debtors. | Case No.: 08-25145<br><br>Chapter 11<br><br>MLG-022 |
| In re:<br><br>CHRISTO BARDIS and SARA BARDIS,<br><br>　　　　　　　Debtors. | Case No.: 08-34878<br><br>Chapter 11<br><br>MHK-009 |

## **DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**
### **(Dated July 30, 2009)**

MEYERS LAW GROUP, P.C.
A Professional Corporation
MERLE C. MEYERS, ESQ. CA Bar #66849
EDIE WALTERS, ESQ. D.C. Bar #474033
MICHELE THOMPSON, ESQ., CA Bar #241676
44 Montgomery Street, Suite 1010
San Francisco, California 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@mlg-pc.com
　　　　ewalters@mlg-pc.com
　　　　mthompson@mlg-pc.com

Attorneys for John and Judith Reynen, Debtors-in-Possession

MEEGAN, HANSCHU & KASSENBROCK
DAVID M. MEEGAN, ESQ. CA Bar #114549
11341 Gold Express Drive, Suite 110
Gold River, CA 95670
Telephone: (916) 925-1800
Facsimile: (916) 889-8359
Email: DMeegan@mhksacto.com

Attorneys for Christo and Sara Bardis, Debtors-in-Possession

DEBTORS SECOND AMENDED JOINT PLAN OF REORGANIZATION

# TABLE OF CONTENTS

I.  DEFINITION AND CONSTRUCTION OF TERMS ....................................................1
    1.1.  Definitions. ..........................................................................................................1
    1.2.  Other Terms .........................................................................................................1
    1.3.  Construction of Certain Terms. ...........................................................................1
    1.4.  Plan Controls.. ......................................................................................................2

II. CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT ....................2
    2.1.  Classification. .......................................................................................................2
          2.1.1.  Class A1 (Reynen Priority Claims) .........................................................3
          2.1.2.  Class A2 (Bardis Priority Claims) ..........................................................3
          2.1.3.  Class B1 (Reynen Secured Claims) .........................................................3
          2.1.4.  Class B2 (Bardis Secured Claims) ..........................................................4
          2.1.5.  Class C1 (Reynen Convenience Claims). .................................................5
          2.1.6.  Class C2 (Bardis Convenience Claims). ..................................................5
          2.1.7.  Class D1 (Reynen Unsecured Claims). ....................................................5
          2.1.8.  Class D2 (Bardis Unsecured Claims). .....................................................5
          2.1.9.  Class E1 (Reynen Interests) .....................................................................5
          2.1.10. Class E2 (Bardis Interests) .....................................................................5
    2.2.  Impairment. ...........................................................................................................5

III. TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS ................................5
    3.1.  Generally. .............................................................................................................5
    3.2.  Administrative Claims .........................................................................................6
    3.3.  Penalties and Interest. ..........................................................................................6
    3.4.  Payment. ...............................................................................................................6
          3.4.1.  Administrative Expense Claims. ..............................................................6
          3.4.2.  Priority Tax Claims. ................................................................................7
    3.5.  Allocation Between Estates. .................................................................................7

IV. TREATMENT OF UNIMPAIRED CLASSES .......................................................8
    4.1.  Class A1 (Priority Claims). .................................................................................8
    4.2.  Class A2 (Priority Claims). .................................................................................8
    4.3.  Class B1.1 (Silver Oak Reynen Secured Claim). ..................................................8
    4.4.  Class B1.12 (Other Reynen Secured Claims). ......................................................9
          4.4.1.  Reinstatement ..........................................................................................9
          4.4.2.  Full Satisfaction. .....................................................................................9
          4.4.3.  Abandonment/Return of Collaterall. ......................................................9
    4.5.  Class B2.1 (ATAP Secured Claim) ...................................................................10
    4.6.  Class B2.2 (Silver Oak Bardis Secured Claim). ................................................10
    4.7.  Class B2.3 (Wachovia –Gold River Secured Claim) ..........................................10
    4.8.  Class B2.4 (Wachovia-L.A. Secured Claim). .....................................................11
    4.9.  Class B2.8 (BankFirst-Pebble Proceeds Secured Claim). ...................................11
    4.10. Class B2.9 (Other Bardis Secured Claims) ........................................................11
          4.10.1. Reinstatement. .......................................................................................12

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

|  | 4.10.2. | Full Satisfaction | 12 |
|  | 4.10.3. | Abandonment/Return of Collateral | 12 |
| 4.11. | Class B2.10 (Travelers Secured Claim) | | 13 |
| 4.12. | Class B1.8 (Wells-Wallace Secured Claim) | | 14 |
| 4.13. | Class B1.1 (Wells-Reno Secured Claim) | | 14 |

V. TREATMENT OF IMPAIRED CLASSES ... 15

| 5.1. | Class B1.2 (AKT Secured Claim) | | 15 |
|  | 5.1.1. | Abandonment | 15 |
|  | 5.1.2. | Reinstatement | 15 |
|  | 5.1.3. | Early Relief | 16 |
|  | 5.1.4. | Lien Retention | 16 |
| 5.2. | Class B1.3 (Bank of America-Sacramento Secured Claim) | | 16 |
|  | 5.2.1. | Abandonment | 16 |
|  | 5.2.2. | Reinstatement | 17 |
|  | 5.2.3. | Early Relief | 17 |
|  | 5.2.4. | Lien Retention | 18 |
| 5.3. | Class B1.4 (CBT Secured Claim) | | 18 |
|  | 5.3.1. | Abandonment | 18 |
|  | 5.3.2. | Reinstatement | 18 |
|  | 5.3.3. | Early Relief | 19 |
|  | 5.3.4. | Lien Retention | 19 |
| 5.4. | Class B1.5 (Chase Secured Claim) | | 19 |
|  | 5.4.1. | Abandonment | 19 |
|  | 5.4.2. | Reinstatement | 20 |
|  | 5.4.3. | Early Relief | 20 |
|  | 5.4.4. | Lien Retention | 20 |
| 5.5. | Class B1.6 (Merrill Lynch Secured Claim) | | 21 |
|  | 5.5.1. | Abandonment | 21 |
|  | 5.5.2. | Reinstatement | 21 |
|  | 5.5.3. | Early Relief | 22 |
|  | 5.5.4. | Lien Retention | 22 |
| 5.6. | Class B1.7 (PNB Secured Claim) | | 22 |
|  | 5.6.1. | Abandonment | 22 |
|  | 5.6.2. | Reinstatement | 23 |
|  | 5.6.3. | Early Relief | 23 |
|  | 5.6.4. | Lien Retention | 23 |
| 5.7. | [INTENTIONALLY OMITTED] | | 24 |
| 5.8. | Class B1.9 (Wells-Mendocino Secured Claim) | | 24 |
|  | 5.8.1. | Abandonment | 24 |
|  | 5.8.2. | Reinstatement | 24 |
|  | 5.8.3. | Early Relief | 25 |
|  | 5.8.4. | Lien Retention | 25 |
| 5.9. | Class B1.10 (Wells-Truckee Secured Claim) | | 25 |
|  | 5.9.1. | Abandonment | 25 |
|  | 5.9.2. | Reinstatement | 26 |
|  | 5.9.3. | Early Relief | 26 |
|  | 5.9.4. | Lien Retention | 26 |

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

ii

5.10.    INTENTIONALLY OMITTED]..................................................................27
5.11.    Classes B2.5, B2.6 and B2.7 (Bank of West-Gold River Secured Claim, BankFirst-Gold River Secured Claim and First Tennessee Secured Claim). ......27
    5.11.1. Avoidance.............................................................................27
    5.11.2. Abandonment.........................................................................27
5.12.    Class C1 (Reynen Convenience Claims)....................................................27
    5.12.1. Opt-Out Election......................................................................28
    5.12.2. Opt-In Election.......................................................................28
5.13.    Class C2 (Bardis Convenience Claims)......................................................28
    5.13.1. Opt-Out Election......................................................................28
    5.13.2. Opt-In Election.......................................................................28
5.14.    Class D1 (Reynen Unsecured Claims)...................................................29
5.15.    Class D2 (Bardis Unsecured Claims)......................................................29
5.16.    Class E1 (Reynen Interests)..............................................................29
5.17.    Class E2 (Bardis Interests)..............................................................29

VI.    EXECUTORY CONTRACTS ..............................................................30
6.1.    Generally...............................................................................30
6.2.    Assumption and Rejection...............................................................30
    6.2.1.   Assumption Schedule...............................................................30
    6.2.2.   Rejection...........................................................................30
6.3.    Cure Amounts..........................................................................30
    6.3.1.   Objections..........................................................................30
    6.3.2.   Resolution..........................................................................31
6.4.    Payment of Cure........................................................................31
6.5.    Approval of Assumption or Rejection....................................................31
6.6.    Bar Date for Rejection Claims...........................................................32
6.7.    Assignment of Assumed Contracts......................................................32
6.8.    Plan Agent Review......................................................................32

VII.   MEANS FOR EXECUTION OF THE PLAN ............................................33
7.1.    Plan Effectiveness......................................................................33
7.2.    Appointment and Qualification of Plan Agent...........................................33
7.3.    Duties and Powers of Plan Agent........................................................33
    7.3.1.   Directing Reorganized Debtors.....................................................33
    7.3.2.   Implementation.....................................................................34
    7.3.3.   Claims.............................................................................34
    7.3.4.   Distributions.......................................................................34
    7.3.5.   Use of Funds.......................................................................34
    7.3.6.   Assets.............................................................................34
    7.3.7.   Bank Accounts.....................................................................34
    7.3.8.   Tax Refunds.......................................................................34
7.4.    Buildco Operations and Budget..........................................................34
    7.4.1.   Consensual Budget Modifications..................................................34
    7.4.2.   Build-Outs.........................................................................35
    7.4.3.   Tax Returns........................................................................35
    7.4.4.   Shared Funding By Estates.........................................................35
    7.4.5.   Nonconsensual Budget Modifications...............................................36
    7.4.6.   Prohibited Activities...............................................................36

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

iii

|  |  | 7.4.7. | Closure. | 36 |
|  | 7.5. |  | Plan Committee. | 37 |
|  | 7.6. |  | Reorganized Debtors' Duties | 38 |
|  |  | 7.6.1. | In General.. | 38 |
|  |  | 7.6.2. | Sale Efforts. | 39 |
|  |  | 7.6.3. | Subject Tax Returns | 39 |
|  |  | 7.6.4. | Claims Review and Objections | 40 |
|  |  | 7.6.5. | Estate Property. | 40 |
|  | 7.7. |  | Reorganized Debtors' Compensation and Incentives. | 40 |
|  |  | 7.7.1. | Sale Period Compensation. | 40 |
|  |  | 7.7.2. | Claim Reduction Incentives. | 41 |
|  |  | 7.7.3. | Tax Refund Incentives. | 42 |
|  |  | 7.7.4. | Death or Incapacity of John D. Reynen or Christo Bardis. | 42 |
|  | 7.8. |  | Suspension of Reorganized Debtors' Payments. | 43 |
|  | 7.9. |  | Timing of Payments of Tax Refunds. | 43 |
|  | 7.10. |  | Revesting of Excluded Assets. | 44 |
|  | 7.11. |  | Reorganized Debtors' Assets Not Property of the Estates. | 44 |
|  | 7.12. |  | Vesting of Estate Property Other Than Excluded Assets.. | 45 |
|  | 7.13. |  | Creditors' Committee. | 45 |
|  | 7.14. |  | Professional Retention and Compensation. | 45 |
|  |  | 7.14.1. | Reorganized Debtors' Professionals. | 45 |
|  |  | 7.14.2. | Plan Agent's Professionals. | 46 |
|  |  | 7.14.3. | Plan Committee's Professionals. | 46 |
|  |  | 7.14.4. | Compensation. | 46 |
|  |  | 7.14.5. | Allocation. | 46 |
|  | 7.15. |  | Preservation of Causes of Action. | 47 |
|  | 7.16. |  | Reserves. | 47 |
|  |  | 7.16.1. | Calculation. | 47 |
|  |  | 7.16.2. | Reserve Maintenance And Interest.. | 47 |
|  |  | 7.16.3. | Release of Reserved Funds. | 47 |
|  | 7.17. |  | Unclaimed Distributions. | 48 |
|  | 7.18. |  | *De Minimus* Distributions. | 48 |
|  | 7.19. |  | Compliance With Tax Requirements. | 48 |
|  | 7.20. |  | Quarterly Fees. | 49 |
|  | 7.21. |  | Objections to Claims. | 49 |
|  | 7.22. |  | Other Actions. | 49 |
|  | 7.23. |  | Term of Injunctions and Stays. | 49 |
|  | 7.24. |  | Discharge of Reorganized Debtors | 49 |
|  | 7.25. |  | Permanent Satisfaction And Injunction.. | 50 |
|  | 7.26. |  | Indemnification and Insurance.. | 50 |
|  | 7.27. |  | Inter-Estate Release. | 51 |
|  | 7.28. |  | Estimation of Claims. | 51 |
|  | 7.29. |  | Postconfirmation Reports. | 51 |
|  | 7.30. |  | Estate Compromises. | 52 |
| VIII. |  |  | RETENTION OF JURISDICTION | 52 |
|  | 8.1. |  | Generally. | 52 |
| IX. |  |  | MISCELLANEOUS PROVISIONS | 53 |

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

iv

9.1.    Exemption from Transfer Taxes.....................................................................53
9.2.    Binding Effect.............................................................................................54
9.3.    Ratification..................................................................................................54
9.4.    Notices.......................................................................................................54
9.5.    Governing Law.............................................................................................55
9.6.    Headings.....................................................................................................55
9.7.    Exhibits.......................................................................................................55
9.8.    Closing Case...............................................................................................55
9.9.    Expenses.....................................................................................................56

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
21860_3.DOC

JOHN D. REYNEN and JUDITH M. REYNEN, individuals and the debtors-in-possession in Chapter 11 Case No. 08-25145 (collectively, the "Reynen Debtors"), and CHRISTO BARDIS and SARA BARDIS, individuals and the debtors-in-possession in Chapter 11 Case No. 08-34878 (collectively, the "Bardis Debtors," and together with the Reynen Debtors, the "Debtor Group"), hereby propose this Debtors' Second Amended Joint Plan Of Reorganization (as it may be amended or modified hereafter, the "Plan") in the within chapter 11 cases, for their joint reorganization under chapter 11 of the United States Bankruptcy Code, pursuant to the provisions of Section 1121(a) of title 11 of the United States Code.

## ARTICLE I

## DEFINITION AND CONSTRUCTION OF TERMS

1.1.    Definitions.  As used herein, capitalized terms shall have the meanings set forth in the schedule of definitions attached hereto and incorporated herein as **Exhibit "A."**

1.2.    Other Terms.  Any term used in the Plan that is not defined herein or in **Exhibit "A"** shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.  A term used in this Plan and not defined herein or in the Bankruptcy Code, but which is defined in the Bankruptcy Rules, shall have the meaning assigned to the term in the Bankruptcy Rules.

1.3.    Construction of Certain Terms.  In addition to the foregoing, the following shall apply:

1.3.1.    The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan, unless otherwise indicated.

1.3.2.    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

1.3.3.    Whenever a term is used that may refer to an event, person, thing, status or document in either the Reynen Case or the Bardis Case, such term shall apply such event,

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

person, thing, status or document in the case that is appropriate to the context of such use. For example, the use of the term "Schedules" in the context of Claims against the Reynen Estate shall be deemed to refer to the Schedules filed by the Reynens.

1.3.4. Where the Plan expressly requires the "reasonable consent" or "reasonable approval" of a party as a condition to implementation of a transaction or other event, if such consent is requested and not provided, the requesting party shall be entitled to seek approval for such transaction or other event by the Bankruptcy Court, *provided* that such requesting party demonstrates, based on a preponderance of evidence, that the requested consent was unreasonably withheld. Where the Plan does not expressly require that consent or approval be "reasonable," consent or approval shall be in the sole discretion of the party that is asked for such consent or approval, and the requesting party shall not be entitled to seek alternative approval by the Bankruptcy Court.

1.4. <u>Plan Controls</u>. To the extent of any inconsistencies between the Plan and the Disclosure Statement, the provisions of this Plan shall control and prevail.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

2.1. <u>Classification</u>. The following is a designation of the Classes of Claims and Interests in the Plan. Administrative Expense Claims and Priority Tax Claims (that is, the Nonclassified Priority Claims) have not been classified and are excluded from the following Classes, in accordance with the provisions of Section 1123(a)(1) of the Bankruptcy Code. The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article III herein. Consistent with the provisions of Section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class, as the case may be. Each Claim shall be allowed against a specific Estate, or

against each of the Estates if the Claim is enforceable against both the Reynen Debtors and the Bardis Debtors.

    2.1.1.  <u>Class A1 (Reynen Priority Claims)</u> consists of all Reynen Priority Claims, if any, other than Reynen Nonclassified Priority Claims.

    2.1.2.  <u>Class A2 (Bardis Priority Claims)</u> consists of all Bardis Priority Claims, if any, other than Bardis Nonclassified Priority Claims.

    2.1.3.  <u>Class B1 (Reynen Secured Claims)</u> consists of all Secured Claims in the Reynen Case, as follows:

    2.1.3.1.  <u>Class B1.1 (Silver Oak Reynen Secured Claim)</u> consists of the Reynen Secured Claim held by Silver Oak.

    2.1.3.2.  <u>Class B1.2 (AKT Secured Claim)</u> consists of the Reynen Secured Claim held by AKT.

    2.1.3.3.  <u>Class B1.3 (Bank of America-Sacramento Secured Claim)</u> consists of the Reynen Secured Claim held by Bank of America and secured by the Sacramento Property.

    2.1.3.4.  <u>Class B1.4 (CBT Secured Claim)</u> consists of the Reynen Secured Claim held by CBT.

    2.1.3.5.  <u>Class B1.5 (Chase Secured Claim)</u> consists of the Reynen Secured Claim held by Chase.

    2.1.3.6.  <u>Class B1.6 (Merrill Lynch Secured Claim)</u> consists of the Reynen Secured Claim held by Merrill Lynch.

    2.1.3.7.  <u>Class B1.7 (PNB Secured Claim)</u> consists of the Reynen Secured Claim held by PNB.

    2.1.3.8.  <u>Class B1.8 (Wells-Wallace Secured Claim)</u> consists of the Reynen Secured Claim held by Wells and secured by the Wallace Property.

    2.1.3.9.  <u>Class B1.9 (Wells-Mendocino Secured Claim)</u> consists of the Reynen Secured Claim held by Wells and secured by the Mendocino Property.

    2.1.3.10.  <u>Class B1.10 (Wells-Truckee Secured Claim)</u> consists of the

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

3

Reynen Secured Claim held by Wells and secured by the Truckee Property.

2.1.3.11. <u>Class B1.11 (Wells-Reno Secured Claim)</u> consists of the Reynen Secured Claim held by Wells and secured by the Reno Property.

2.1.3.12. <u>Class B1.12 (Other Reynen Secured Claims)</u> consist of each Reynen Secured Claim, if any, that is not within any other subpart of Class B1.

2.1.4. <u>Class B2 (Bardis Secured Claims)</u> consists of all Secured Claims in the Bardis Case, as follows:

2.1.4.1. <u>Class B2.1 (ATAP Secured Claim)</u> consists of the Bardis Secured Claim held by ATAP and secured by the Chew Ranch Interest.

2.1.4.2. <u>Class B2.2 (Silver Oak Bardis Secured Claim)</u> consists of the Bardis Secured Claim held by Silver Oak.

2.1.4.3. <u>Class B2.3 (Wachovia-Gold River Secured Claim)</u> consists of the Bardis Secured Claim held by Wachovia and secured by the Gold River Property.

2.1.4.4. <u>Class B2.4 (Wachovia-L.A. Secured Claim)</u> consists of the Bardis Secured Claim held by Wachovia and secured by the L.A. Property.

2.1.4.5. <u>Class B2.5 (Bank of West-Gold River Secured Claim)</u> consists of the Bardis Secured Claim held by Bank of West and secured by the Gold River Property.

2.1.4.6. <u>Class B2.6 (BankFirst-Gold River Secured Claim)</u> consists of the Bardis Secured Claim held by BankFirst and secured by the Gold River Property.

2.1.4.7. <u>Class B2.7 (First Tennessee Secured Claim)</u> consists of the Bardis Secured Claim held by First Tennessee and secured by the Gold River Property.

2.1.4.8. <u>Class B2.8 (BankFirst-Pebble Proceeds Secured Claim)</u> consists of the Bardis Secured Claim held by BankFirst and secured by the Pebbles Proceeds.

2.1.4.9. <u>Class B2.9 (Other Bardis Secured Claims)</u> consists of each Bardis Secured Claim, if any, that is not within any other subpart of Class B2.

2.1.4.10. <u>Class B2.10 (Travelers Secured Claim)</u> consists of the Bardis Secured Claim held by Travelers, to the extent secured by the Bardis Tax Refund.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

4

2.1.5.  Class C1 (Reynen Convenience Claims) consists of all Reynen Convenience Claims.

2.1.6.  Class C2 (Bardis Convenience Claims) consists of all Bardis Convenience Claims.

2.1.7.  Class D1 (Reynen Unsecured Claims) consists of all Reynen Unsecured Claims other than Reynen Nonclassified Priority Claims and Reynen Convenience Claims. Claims within Class D1 include, without limitation, all Reynen Unsecured Claims arising from (a) deficiency damages following disposition of collateral pursuant to Section 4.5.3 of the Plan, and (b) rejection of unexpired leases and other executory contracts pursuant to Article VI of the Plan.

2.1.8.  Class D2 (Bardis Unsecured Claims) consists of all Bardis Unsecured Claims other than Bardis Nonclassified Priority Claims and Bardis Convenience Claims. Claims within Class D2 include, without limitation, all Bardis Unsecured Claims arising from (a) deficiency damages following disposition of collateral pursuant to Section 4.12.3 of the Plan, and (b) rejection of unexpired leases and other executory contracts pursuant to Article VI of the Plan.

2.1.9.  Class E1 (Reynen Interests) consists of all rights to, and interests in, property of the Reynen Estate held by the Reynen Debtors.

2.1.10. Class E2 (Bardis Interests) consists of all rights to, and interests in, property of the Bardis Estate held by the Bardis Debtors.

2.2.  Impairment.  Under the terms of the Plan, Allowed Claims within Classes A1, A2, B1.1, B1.8, B1.11, B1.12, B2.1, B2.2, B2.3, B2.4, B2.8, B2.9 and B2.10 will not be impaired. Allowed Claims and Interests within all other Classes will be impaired under the terms of the Plan.

## ARTICLE III

## TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS

3.1.  Generally.  Subject to the provisions of all other sections of this Article III, (a) each holder of an Allowed Reynen Nonclassified Priority Claim shall receive on account of such Claim,

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Cash from the Reynen Estate equal to the allowed amount of such Claim, and (b) each holder of an Allowed Bardis Nonclassified Priority Claim shall receive on account of such Claim, Cash from the Bardis Estate equal to the allowed amount of such Claim

3.2.  <u>Administrative Claims</u>.  No Administrative Expense Claim, including without limitation Professional Fees, incurred before the Effective Date, other than ordinary course expenses incurred by the Debtors, shall become an Allowed Claim unless (a) a formal application, motion, request or proof therefor has been filed with the Court and served upon the Reorganized Debtors, the Plan Agent, the Plan Committee and the United States Trustee, within forty five (45) days following the Effective Date (the "Administrative Bar Date") or by such earlier deadline as may apply to such claim pursuant to an earlier order of the Court, and (b) such application, motion, request or proof has not been withdrawn, denied or dismissed.  The Reorganized Debtors, the Plan Agent, the Plan Committee and the United States Trustee shall have the exclusive right to object to any such applications, motions, requests and proofs, and the Reorganized Debtors shall schedule a hearing or hearings with respect to any such applications, motions, requests and proofs as to which any disputes exist or as to which Court approval is required by the Bankruptcy Rules and Local Rules, as soon as practicable following the Administrative Bar Date, and shall provide notice of such hearings and any objections to the requesting claimants, the Plan Agent, the Plan Committee and the United States Trustee (except to the extent that such applications, motions, requests and proofs have been resolved prior thereto).

3.3.  <u>Penalties and Interest</u>.  Except as may be expressly set forth in the Plan or by an order of the Court, no holder of a Priority Tax Claim or an Administrative Expense Claim (other than such Claims as are held by governmental units and based upon tax liabilities arising after the Petition Date) shall be entitled to payment on account of any postpetition interest or penalties arising with respect to such Claim.

3.4.  <u>Payment</u>.  Payment of Allowed Nonclassified Priority Claims shall occur as follows:

3.4.1.  <u>Administrative Expense Claims</u>.  All payments required by the terms of this Plan on account of Allowed Administrative Expense Claims, unless made earlier by prior agreement or order of the Court, shall be made by the Plan Agent in Cash on the latest of the

6

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

following dates: (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which the holder of such Claim may have consented; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto; or (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code otherwise require Court approval.

    3.4.2. <u>Priority Tax Claims</u>. All payments required by the terms of this Plan on account of Priority Tax Claims shall be made by the Plan Agent in Cash no later than the latest of the following: (a) in four (4) equal, annual payments on each anniversary of the Effective Date until paid in full, together with interest at the nonbankruptcy rate applicable thereto as of the calendar month in which the Confirmation Date occurs, paid on each such anniversary and accruing from the Effective Date; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto, plus interest as described above; or (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code require Court approval, plus interest as described above.

    3.5. <u>Allocation Between Estates</u>. To the extent that an Allowed Administrative Expense Claim (including any such claim paid from funds of one of the Estates prior to the Effective Date) conferred a material benefit on both Estates, payment of such Claim (or in the case of pre-Effective Date payments, reimbursement of such payment) shall be allocated and paid by the two Estates on a fair and equitable basis. Such allocation shall be determined by the Plan Agent, upon fourteen (14) days' written notice to the Plan Committee, the United States Trustee and the Reorganized Debtors, or by the Bankruptcy Court in the event that an objection thereto is filed and served by the Plan Committee, the United States Trustee or the Reorganized Debtors within such notice period. Without limiting the generality of the foregoing, any payments made from funds or other interests of either the Reynen Estate or the Bardis Estate to or for the benefit of R&B or Newco after either of the Petition Dates and prior to the Effective Date shall be allocated on an equal, 50/50 basis. Notwithstanding any of the foregoing, the Estate for which a professional is retained pursuant to

Section 327 of the Bankruptcy Code shall be liable to such professional for the full amount of its allowed compensation and expense reimbursements, regardless of allocations between the Estates.

## ARTICLE IV

## TREATMENT OF UNIMPAIRED CLASSES

Classes of unimpaired Claims and Interests shall be treated as follows:

4.1. <u>Class A1 (Priority Claims)</u>. Each holder of an Allowed Claim within Class A1 shall receive on account of such Claim Cash equal to the allowed amount of such Claim, unless such holder shall have agreed to a less favorable treatment of such Claim. Payment or payments on account of such Claims shall be made by the Plan Agent from the Reynen Estate on or before the latest of the following dates: (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which such holder has consented; (b) on the date that such Claim becomes due pursuant to contractual, statutory or other terms applicable thereto; or (c) as to Disputed Claims, as soon as practicable after the order allowing the Claim has become a Final Order.

4.2. <u>Class A2 (Priority Claims)</u>. Each holder of an Allowed Claim within Class A2 shall receive on account of such Claim Cash equal to the allowed amount of such Claim, unless such holder shall have agreed to a less favorable treatment of such Claim. Payment or payments on account of such Claims shall be made by the Plan Agent from the Bardis Estate on or before the latest of the following dates: (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which such holder has consented; (b) on the date that such Claim becomes due pursuant to contractual, statutory or other terms applicable thereto; or (c) as to Disputed Claims, as soon as practicable after the order allowing the Claim has become a Final Order.

4.3. <u>Class B1.1 (Silver Oak Reynen Secured Claim)</u>. The holder of the Silver Oak Reynen Secured Claim shall be permitted to exercise its right to foreclose upon its collateral, the Silver Oak Reynen Partnership Interest, immediately following the Effective Date. Such holder may amend a proof of claim timely filed in the Reynen Case within Class D1 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Debtors on or before the Deficiency Claim Deadline.

4.4.    Class B1.12 (Other Reynen Secured Claims).  Each holder of an Allowed Reynen Secured Claim within Class B1.12 shall provide notice of such Secured Claim to the Plan Agent and the Reorganized Debtors within thirty (30) days following the Effective Date.  Unless such holder has agreed in writing with the Plan Agent to other treatment of such claim, such holder shall receive one of the following treatments of such claim, at the election of the Plan Agent (which election shall be deemed to be that which is described in Section 4.4.3 hereinbelow (Abandonment/Return of Collateral) unless otherwise stated by the Plan Agent in a writing served upon such holder on or before the later of (a) the thirtieth (30th) day after the Effective Date or (b) within thirty (30) days following the Reorganized Debtors' and the Plan Agent's receipt of written notice of such Reynen Secured Claim):

4.4.1.    Reinstatement:  Any and all defaults shall be Cured, and any and all damages compensated, by the Plan Agent from the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among such holder and the Plan Agent, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between such holder and the Plan Agent, shall be reinstated pursuant to the provisions of Section 1124(2) of the Bankruptcy Code and shall be the obligation of the Reynen Estate after the Effective Date.

4.4.2.    Full Satisfaction:  Such Allowed Secured Claim shall be paid in full by the Plan Agent, or in such lesser amount as may be agreed upon by the holder of such Claim and the Plan Agent, from the Reynen Estate, as soon as practicable after such Claim becomes an Allowed Secured Claim, in exchange for which the holder of such Claim shall execute and deliver to the Plan Agent all appropriate documentation reasonably necessary to evidence and effectuate a full release and discharge of all liens, security interests and obligations arising from such Claim.

4.4.3.    Abandonment/Return of Collateral.  Such holder shall be permitted to remove, at its own cost and peril and without damage to any other property of the Reynen

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

Estate, and at a time mutually convenient to such holder and the Plan Agent, such property as to which it holds a perfected security interest, *provided* that in the event of any dispute between such holder and the Plan Agent as to the extent, priority, validity or enforceability of such security interest, such removal shall occur only after such dispute is resolved by a Final Order. Such holder may file and assert a Claim within Class D1 for any deficiency resulting from such abandonment and return of collateral, to the extent that such Claim is allowable and enforceable under applicable law, *provided* that a proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors within thirty (30) days following the Effective Date.

4.5.     Class B2.1 (ATAP Secured Claim). The holder of the ATAP Secured Claim shall be permitted to exercise its right to foreclose upon its collateral, the Chew Ranch Interest, immediately following the Effective Date. Such holder may amend a proof of claim timely filed in the Reynen Case within Class D1 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the Deficiency Claim Deadline.

4.6.     Class B2.2 (Silver Oak Bardis Secured Claim). The holder of the Silver Oak Bardis Secured Claim shall be permitted to exercise its right to foreclose upon its collateral, the Silver Oak Bardis Partnership Interest, immediately following the Effective Date. Such holder may amend a proof of claim timely filed in the Reynen Case within Class D1 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the Deficiency Claim Deadline.

4.7.     Class B2.3 (Wachovia –Gold River Secured Claim). Any and all defaults shall be Cured, and any and all damages compensated, by the Reorganized Bardises from funds outside of the Bardis Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among such holder and the Reorganized Bardises, or by a Final Order if no

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between such holder and the Reorganized Bardises, shall be reinstated pursuant to the provisions of Section 1124(2) of the Bankruptcy Code and shall be the obligation of the Reorganized Bardises after the Effective Date.

4.8.    <u>Class B2.4 (Wachovia-L.A. Secured Claim)</u>.    The holder of the Wachovia-L.A. Secured Claim shall be permitted to exercise its right to foreclose upon its collateral, the L.A. Property, immediately following the Effective Date.    Such holder may amend a proof of claim timely filed in the Bardis Case within Class D2 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the Deficiency Claim Deadline.

4.9.    <u>Class B2.8 (BankFirst-Pebble Proceeds Secured Claim)</u>.    Any alleged Claim within Class B2.8 is disputed.    To the extent that the holder of such alleged Claim asserts any rights or claims to the Pebble Proceeds, such holder shall notify the Reorganized Debtors and the Plan Agent in writing of such assertion no later than the thirtieth (30) day following the Effective Date, absent which any such Claim shall be deemed fully and forever disallowed.    In the event that such timely notice is provided to the Reorganized Debtors and the Plan Agent, the Reorganized Bardises shall file a motion or complaint to resolve all disputes with respect to such alleged Claim within sixty (60) days following the Effective Date.    The extent, validity, enforceability and allowance of such alleged Claim shall be determined in the resolution of such motion or complaint, and in the event that a Bardis Secured Claim within Class B2.8 is Allowed by a Final Order in such resolution, then the holder of such Allowed Claim shall be permitted to enforce its Allowed Claim against the Pebble Proceeds in accordance with the terms of such Final Order.

4.10.    <u>Class B2.9 (Other Bardis Secured Claims)</u>.    Each holder of an Allowed Bardis Secured Claim within Class B2.9 shall provide notice of such Secured Claim to the Plan Agent and the Reorganized Debtors within thirty (30) days following the Effective Date.    Unless such holder has agreed in writing with the Plan Agent to other treatment of such claim, such holder shall receive one of the following treatments of such claim, at the election of the Plan Agent (which election shall

be deemed to be that which is described in Section 4.10.3 hereinbelow (Abandonment/Return of Collateral) unless otherwise stated by the Plan Agent in a writing served upon such holder on or before the later of (a) the thirtieth (30th) day after the Effective Date or (b) within thirty (30) days following the Reorganized Debtors' and the Plan Agent's receipt of written notice of such Bardis Secured Claim):

4.10.1. <u>Reinstatement</u>: Any and all defaults shall be Cured, and any and all damages compensated, by the Plan Agent from the Bardis Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among such holder and the Plan Agent, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between such holder and the Plan Agent, shall be reinstated pursuant to the provisions of Section 1124(2) of the Bankruptcy Code and shall be the obligation of the Bardis Estate after the Effective Date.

4.10.2. <u>Full Satisfaction</u>: Such Allowed Secured Claim shall be paid in full by the Plan Agent, or in such lesser amount as may be agreed upon by the holder of such Claim and the Plan Agent, from the Bardis Estate, as soon as practicable after such Claim becomes an Allowed Secured Claim, in exchange for which the holder of such Claim shall execute and deliver to the Plan Agent all appropriate documentation reasonably necessary to evidence and effectuate a full release and discharge of all liens, security interests and obligations arising from such Claim.

4.10.3. <u>Abandonment/Return of Collateral</u>. Such holder shall be permitted to remove, at its own cost and peril and without damage to any other property of the Bardis Estate, and at a time mutually convenient to such holder and the Plan Agent, such property as to which it holds a perfected security interest, *provided* that in the event of any dispute between such holder and the Plan Agent as to the extent, priority, validity or enforceability of such security interest, such removal shall occur only after such dispute is resolved by a Final Order. Such holder may file and assert a Claim within Class D2 for any deficiency resulting from such abandonment and return of collateral, to the extent that such Claim is allowable

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

and enforceable under applicable law, *provided* that a proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors within thirty (30) days following the Effective Date.

4.11.   Class B2.10 (Travelers Secured Claim).   In the event, and to the extent, that the Travelers Secured Claim is Allowed by the entry of a Final Order, the Plan Agent shall pay to Travelers funds from the Bardis Tax Refund in an amount equal to such Allowed Travelers Secured Claim, subject to each of the following terms and conditions:

4.11.1.   Such payment shall not be distributed by the Plan Agent until the applicable statute of limitations period has expired or the tax liability has been determined by a final non-appealable decision, in both cases having the legal effect of preventing any taxing authority from seeking a return of any portion of the Bardis Tax Refund, *provided, however*, that nothing herein shall prejudice (i) the right, if any, of Travelers to seek immediate payment of the Bardis Tax Refund to the extent of its Allowed Secured Claim regardless of such finality if Travelers obtains a Final Order (a) allowing the Travelers Secured Claim and (b) determining that its interest in the Bardis Tax Refund is superior to any claim or interest of the United States, the Internal Revenue Service, the State of California or the California Franchise Tax Board in or with respect to the Bardis Tax Refund, whether as a matter of reimbursement, return, audit or challenge of any kind; or (ii) the right of the Plan Agent and the Reorganized Bardises to defend against such allowance and determination.

4.11.2.   Travelers' will retain its lien, if any, in the Bardis Tax Refund to secure the Travelers Secured Claim, to the same extent of amount, priority, validity, avoidability, enforceability and efficacy as existed as of the Bardis Petition Date (provided that the foregoing language shall not be deemed to prejudice any contention made by Travelers, the Plan Agent or the Reorganized Bardises that events occurring after the Petition Date affect Travelers' lien), until and unless (a) the Allowed Travelers Secured Claim is paid in full in accordance with the terms of this Plan; or (b) the Travelers Secured claim is disallowed, avoided, removed or otherwise modified by Final Order of a court of competent jurisdiction or written agreement.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

4.11.3.    Until the Travelers Secured Claim has become an Allowed Claim or a Disallowed Claim, the Plan Agent shall hold the Bardis Tax Refund in reserve to the extent of $26,018,351.00 (or such lesser amount that is the amount of the Bardis Tax Refund, if the Court determines that Travelers' lien is inferior in priority to the taxing authority making claim to the refund, in whole or in part) without use or distribution, *provided* that such reserved amount may be reduced (a) with the written consent of Travelers, the Plan Agent and the Reorganized Bardises; or (b) by an Final Order of the Bankruptcy Court estimating the Travelers Secured Claim pursuant to applicable provisions of the Bankruptcy Code, upon a motion as to which all defenses and grounds for opposition are reserved to Travelers, notwithstanding any other provisions of this Plan.

4.11.4.    Nothing in this Section 4.11 shall prejudice or adversely affect (a) the right of the Plan Agent, the Reorganized Bardises or any other party in interest to seek a surcharge against any collateral in which Travelers has an interest, including without limitation the Bardis Tax Refund, pursuant to Section 506(c) of the Bankruptcy Code, for fees or expenses related to the Bardis Tax Refund, including without limitation attorneys' fees and costs and the Bardis Tax Incentives.

4.12.    Class B1.8 (Wells-Wallace Secured Claim).    The holder of the Wells-Wallace Secured Claim shall be permitted to exercise its right to foreclose upon its collateral, the Wallace Property, immediately following the Effective Date.  Such holder may amend a proof of claim timely filed in the Reynen Case within Class D1 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the Deficiency Claim Deadline.

4.13.    Class B1.1 (Wells-Reno Secured Claim).    The holder of the Wells-Reno Secured Claim shall be permitted to exercise its right to foreclose upon its collateral, the Reno Property, immediately following the Effective Date.  Such holder may amend a proof of claim timely filed in the Reynen Case within Class D1 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the

Court and served upon the Plan Agent and the Reorganized Debtors on or before the Deficiency Claim Deadline.

## ARTICLE V

## TREATMENT OF IMPAIRED CLASSES

Classes of impaired Claims and Interests shall be treated as follows:

5.1. **Class B1.2 (AKT Secured Claim).**  Beginning on the tenth (10th) day of the first full calendar month that commences after the Effective Date (the "Initial Interest Payment Date"), and continuing until the earlier of (a) the tenth (10th) day of the twelfth such calendar month (the "Anniversary Date") or (b) the date of sale or abandonment of the collateral underlying the AKT Secured Claim, the El Dorado Property, the Plan Agent shall pay to AKT from the Reynen Estate in arrears monthly interest accruing on the Allowed AKT Secured Claim at the rate of five percent (5%) per annum, subject to the following:

5.1.1. Abandonment.  At any time after the Effective Date, if the Plan Agent determines that the El Dorado Property is of inconsequential value to the Reynen Estate, the Plan Agent may abandon the El Dorado Property by written notification to AKT, the Plan Committee and the Reorganized Debtors.  Upon such notification, AKT shall be permitted to foreclose upon its security interest in the El Dorado Property in accordance with applicable nonbankruptcy law.  In the event of such notification of abandonment, AKT may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

5.1.2. Reinstatement.  On the Anniversary Date, unless the El Dorado Property has been sold or the Plan Agent has provided notification of abandonment in accordance with Section 5.1.1 above, any and all defaults owing under the Allowed AKT Secured Claim shall be Cured, and any and all damages compensated, by the Plan Agent from the Reynen Estate,

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among AKT and the Plan Agent, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between AKT and the Plan Agent, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect. In the event that the AKT Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

5.1.3. <u>Early Relief</u>. At any time after the Effective Date until abandonment, full payment or reinstatement, AKT may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized Debtors, requiring additional payments by the Plan Agent or abandonment of the El Dorado Property, upon a showing of good cause, including a lack of adequate protection of the AKT Secured Claim.

5.1.4. <u>Lien Retention</u>. AKT shall retain its lien encumbering the El Dorado Property to secure the AKT Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.2. <u>Class B1.3 (Bank of America-Sacramento Secured Claim)</u>. Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale or abandonment of the collateral underlying the Bank of America-Sacramento Secured Claim, the Sacramento Property, the Reorganized Reynens shall pay to Bank of America from funds outside of the Reynen Estate in arrears monthly interest accruing on the Allowed Bank of America-Sacramento Secured Claim at the rate of five percent (5%) per annum, subject to the following:

5.2.1. <u>Abandonment</u>. At any time after the Effective Date, the Reorganized Reynens may abandon the Sacramento Property by written notification to Bank of America,

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

the Plan Committee and the Plan Agent. Upon such notification, Bank of America shall be permitted to foreclose upon its security interest in the Sacramento Property in accordance with applicable nonbankruptcy law. In the event of such notification of abandonment, Bank of America may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

    5.2.2. <u>Reinstatement</u>. On the Anniversary Date, unless the Sacramento Property has been sold or the Reorganized Reynens have provided notification of abandonment in accordance with Section 5.2.1 above, any and all defaults owing under the Allowed Bank of America-Sacramento Secured Claim shall be Cured, and any and all damages compensated, by the Reorganized Reynens from funds outside of the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among Bank of America and the Reorganized Reynens, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between Bank of America and the Reorganized Reynens, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect. In the event that the Allowed Bank of America-Sacramento Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

    5.2.3. <u>Early Relief</u>. At any time after the Effective Date until abandonment, full payment or reinstatement, Bank of America may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized

Debtors, requiring additional payments by the Reorganized Reynens or abandonment of the Sacramento Property, upon a showing of good cause, including a lack of adequate protection of the Bank of America-Sacramento Secured Claim.

    5.2.4.    <u>Lien Retention</u>.  Bank of America shall retain its lien encumbering the Sacramento Property to secure the Bank of America-Sacramento Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

    5.3.    <u>Class B1.4 (CBT Secured Claim)</u>.  Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale or abandonment of the collateral underlying the CBT Secured Claim, the Oak Court Property, the Plan Agent shall pay to CBT from the Reynen Estate in arrears monthly interest accruing on the Allowed CBT Secured Claim at the rate of five percent (5%) per annum, subject to the following:

    5.3.1.    <u>Abandonment</u>.  At any time after the Effective Date, if the Plan Agent determines that the Oak Court Property is of inconsequential value to the Reynen Estate, the Plan Agent may abandon the Oak Court Property by written notification to CBT, the Plan Committee and the Reorganized Debtors.  Upon such notification, CBT shall be permitted to foreclose upon its security interest in the Oak Court Property in accordance with applicable nonbankruptcy law.  In the event of such notification of abandonment, CBT may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

    5.3.2.    <u>Reinstatement</u>.  On the Anniversary Date, unless the Oak Court Property has been sold or the Plan Agent has provided notification of abandonment in accordance with Section 5.3.1 above, any and all defaults owing under the Allowed CBT Secured Claim shall be Cured, and any and all damages compensated, by the Plan Agent from the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

determined by agreement among CBT and the Plan Agent, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between CBT and the Plan Agent, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect.  In the event that the Allowed CBT Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

5.3.3.    <u>Early Relief</u>.  At any time after the Effective Date until abandonment, full payment or reinstatement, CBT may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized Debtors, requiring additional payments by the Plan Agent or abandonment of the Oak Court Property, upon a showing of good cause, including a lack of adequate protection of the CBT Secured Claim.

5.3.4.    <u>Lien Retention</u>.  CBT shall retain its lien encumbering the Oak Court Property to secure the CBT Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.4.    <u>Class B1.5 (Chase Secured Claim)</u>.  Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale or abandonment of the collateral underlying the Chase Secured Claim, the Mercedes Vehicle, the Reynen Debtors shall pay to Chase from funds outside of the Reynen Estate in arrears monthly interest accruing on the Allowed Chase Secured Claim at the rate of five percent (5%) per annum, subject to the following:

5.4.1.    <u>Abandonment</u>.  At any time after the Effective Date, if the Reynen Debtors determine that the Mercedes Vehicle is of inconsequential value to the Reynen Debtors, the Reynen Debtors may abandon the Mercedes Vehicle by written notification to Chase.  Upon such notification, Chase shall be permitted to foreclose upon its security interest in the Mercedes Vehicle in accordance with applicable nonbankruptcy law.  In the event of such

19

notification of abandonment, Chase may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

5.4.2.   <u>Reinstatement</u>.   On the Anniversary Date, unless the Mercedes Vehicle has been sold or the Reynen Debtors have provided notification of abandonment in accordance with Section 5.4.1 above, any and all defaults owing under the Allowed Chase Secured Claim shall be Cured, and any and all damages compensated, by the Reynen Debtors from funds outside of the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among Chase and the Reynen Debtors, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between Chase and the Reynen Debtors, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect.   In the event that the Allowed Chase Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

5.4.3.   <u>Early Relief</u>.   At any time after the Effective Date until abandonment, full payment or reinstatement, Chase may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Reynen Debtors, requiring additional payments by the Reynen Debtors or abandonment of the Mercedes Vehicle, upon a showing of good cause, including a lack of adequate protection of the Chase Secured Claim.

5.4.4.   <u>Lien Retention</u>.   Chase shall retain its lien encumbering the Mercedes

Vehicle to secure the Chase Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.5.    Class B1.6 (Merrill Lynch Secured Claim).  Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale of the collateral underlying the Merrill Lynch Secured Claim, the Sacramento Property, at the contract non-default rate underlying the Allowed Merrill Lynch Secured Claim, and shall be paid by the Reorganized Reynens, from funds outside of the Reynen Estate, on said tenth (10th) day of the twelfth full calendar month, unless the Reorganized Reynens abandon the Sacramento Property on or before that date in accordance with Section 5.5.1 below, subject to the following:

5.5.1.    Abandonment.  At any time after the Effective Date, the Reorganized Reynens may abandon the Sacramento Property by written notification to Merrill Lynch, the Plan Committee and the Plan Agent.  Upon such notification, Merrill Lynch shall be permitted to foreclose upon its security interest in the Sacramento Property in accordance with applicable nonbankruptcy law.  In the event of such notification of abandonment, Merrill Lynch may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

5.5.2.    Reinstatement.  On the Anniversary Date, unless the Sacramento Property has been sold or the Reorganized Reynens have provided notification of abandonment in accordance with Section 5.5.1 above, any and all defaults owing under the Merrill Lynch Secured Claim shall be Cured, and any and all damages compensated, by the Reorganized Reynens from funds outside of the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among Merrill Lynch and the Reorganized Reynens, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Merrill Lynch and the Reorganized Reynens, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect. In the event that the Allowed Merrill Lynch Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

5.5.3. _Early Relief_. At any time after the Effective Date until abandonment, full payment or reinstatement, Merrill Lynch may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized Debtors, requiring additional payments by the Reorganized Reynens or abandonment of the Sacramento Property, upon a showing of good cause, including a lack of adequate protection of the Merrill Lynch Secured Claim.

5.5.4. _Lien Retention_. Merrill Lynch shall retain its lien encumbering the Sacramento Property to secure the Merrill Lynch Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.6. _Class B1.7 (PNB Secured Claim)_. Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale of the collateral underlying the PNB Secured Claim, the Pennsylvania Property, at the contract non-default rate underlying the Allowed PNB Secured Claim, and shall be paid by the Reorganized Reynens, from funds outside of the Reynen Estate, on said tenth (10th) day of the twelfth full calendar month, unless the Reorganized Reynens abandon the Pennsylvania Property on or before that date in accordance with Section 5.6.1 below, subject to the following:

5.6.1. _Abandonment_. At any time after the Effective Date, the Reorganized Reynens may abandon the Pennsylvania Property by written notification to PNB, the Plan Committee and the Plan Agent. Upon such notification, PNB shall be permitted to foreclose upon its security interest in the Pennsylvania Property in accordance with applicable nonbankruptcy law. In the event of such notification of abandonment, PNB may amend a

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

5.6.2. <u>Reinstatement</u>. On the Anniversary Date, unless the Pennsylvania Property has been sold or the Reorganized Reynens have provided notification of abandonment in accordance with Section 5.6.1 above, any and all defaults owing under the Allowed PNB Secured Claim shall be Cured, and any and all damages compensated, by the Reorganized Reynens from funds outside of the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among PNB and the Reorganized Reynens, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between PNB and the Reorganized Reynens, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect. In the event that the Allowed PNB Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

5.6.3. <u>Early Relief</u>. At any time after the Effective Date until abandonment, full payment or reinstatement, PNB may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized Debtors, requiring additional payments by the Reorganized Reynens or abandonment of the Pennsylvania Property, upon a showing of good cause, including a lack of adequate protection of the PNB Secured Claim.

5.6.4. <u>Lien Retention</u>. PNB shall retain its lien encumbering the Pennsylvania

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Property to secure the PNB Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.7.    [INTENTIONALLY OMITTED].

5.8.    Class B1.9 (Wells-Mendocino Secured Claim).    Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale or abandonment of the collateral underlying the Wells-Mendocino Secured Claim, the Mendocino Property, the Plan Agent shall pay to Wells from the Reynen Estate in arrears monthly interest accruing on the Allowed Wells-Mendocino Secured Claim at the rate of five percent (5%) per annum, subject to the following:

5.8.1.    Abandonment.    At any time after the Effective Date, if the Plan Agent determines that the Mendocino Property is of inconsequential value to the Reynen Estate, the Plan Agent may abandon the Mendocino Property by written notification to Wells, the Plan Committee and the Reorganized Debtors.    Upon such notification, Wells shall be permitted to foreclose upon its security interest in the Mendocino Property in accordance with applicable nonbankruptcy law.    In the event of such notification of abandonment, Wells may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

5.8.2.    Reinstatement.    On the Anniversary Date, unless the Mendocino Property has been sold or the Plan Agent has provided notification of abandonment in accordance with Section 5.8.1 above, any and all defaults owing under the Allowed Wells-Mendocino Secured Claim shall be Cured, and any and all damages compensated, by the Plan Agent from the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among Wells and the Plan Agent, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other

24

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

terms as have been agreed upon between Wells and the Plan Agent, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect. In the event that the Allowed Wells-Mendocino Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

5.8.3.   <u>Early Relief</u>.  At any time after the Effective Date until abandonment, full payment or reinstatement, Wells may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized Debtors, requiring additional payments by the Plan Agent or abandonment of the Mendocino Property, upon a showing of good cause, including a lack of adequate protection of the Wells-Mendocino Secured Claim.

5.8.4.   <u>Lien Retention</u>.  Wells shall retain its lien encumbering the Mendocino Property to secure the Wells-Mendocino Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.9.   <u>Class B1.10 (Wells-Truckee Secured Claim)</u>.   Beginning on the Initial Interest Payment Date and continuing until the earlier of (a) the Anniversary Date or (b) the date of sale or abandonment of the collateral underlying the Wells-Truckee Secured Claim, the Truckee Property, the Plan Agent shall pay to Wells from the Reynen Estate in arrears monthly interest accruing on the Allowed Wells-Truckee Secured Claim at the rate of five percent (5%) per annum, subject to the following:

5.9.1.   <u>Abandonment</u>.  At any time after the Effective Date, if the Plan Agent determines that the Truckee Property is of inconsequential value to the Reynen Estate, the Plan Agent may abandon the Truckee Property by written notification to Wells, the Plan Committee and the Reorganized Debtors.  Upon such notification, Wells shall be permitted to foreclose upon its security interest in the Truckee Property in accordance with applicable

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

nonbankruptcy law. In the event of such notification of abandonment, Wells may amend a prior proof of claim, if such prior proof of claim was timely filed in the Reynen Case, within Class D1, in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors on or before the thirtieth (30th) day following such notification of abandonment.

      5.9.2.   <u>Reinstatement</u>. On the Anniversary Date, unless the Truckee Property has been sold or the Plan Agent has provided notification of abandonment in accordance with Section 5.9.1 above, any and all defaults owing under the Allowed Wells-Truckee Secured Claim shall be Cured, and any and all damages compensated, by the Plan Agent from the Reynen Estate, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among Wells and the Plan Agent, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between Wells and the Plan Agent, shall be reinstated, all defaults and Events of Default that have occurred shall thereby be deemed cured and all consequences of any such defaults or Events of Default, including without limitation acceleration of the maturity of such Claim, shall be reversed and shall be of no effect. In the event that the Allowed Wells-Truckee Secured Claim has become fully due and payable by its terms (after giving effect to the treatment of such Claim in the immediately preceding sentence) by such date, then reinstatement and cure shall require payment in full of such Claim.

      5.9.3.   <u>Early Relief</u>. At any time after the Effective Date until abandonment, full payment or reinstatement, Wells may seek an order of the Bankruptcy Court, upon twenty-eight days' notice to the Plan Agent, the Plan Committee and the Reorganized Debtors, requiring additional payments by the Plan Agent or abandonment of the Truckee Property, upon a showing of good cause, including a lack of adequate protection of the Wells-Truckee Secured Claim.

      5.9.4.   <u>Lien Retention</u>. Wells shall retain its lien encumbering the Truckee Property

to secure the Wells-Truckee Secured Claim, until and unless paid in full in accordance with the terms of the Plan.

5.10. INTENTIONALLY OMITTED].

5.11. <u>Classes B2.5, B2.6 and B2.7 (Bank of West-Gold River Secured Claim, BankFirst-Gold River Secured Claim and First Tennessee Secured Claim)</u>. The holders of the Allowed Bardis Secured Claims within Classes B2.5, B2.6 and B2.7 shall each receive one of the following treatments of such claim, at the election of the Reorganized Bardises:

5.11.1. <u>Avoidance</u>. Within thirty (30) days following the Effective Date, the Reorganized Bardises may file and serve upon each of such holders a motion or complaint for avoidance, disallowance or modification of such Bardis Secured Claims, pursuant to the provisions of Section 522(f) of the Bankruptcy Code or any other provision of law. In the event that such motion is granted, or such complaint results in judgment in favor of the Reorganized Bardises, then each of such Bardis Secured Claims shall be disallowed and no lien arising therefrom shall encumber the Gold River Property.

5.11.2. <u>Abandonment</u>. In the event that such motion or complaint as described in Section 5.11.1 of the Plan is not filed and served within thirty (30) days following the Effective Date, or if such motion or complaint is timely filed and served but is denied or results in a judgment in favor of Bank of West, BankFirst or First Tennessee, then the prevailing holders of the Bardis Secured Claims within Classes B2.5, B2.6 and B2.7 shall be permitted to exercise their respective rights, if any, to foreclose upon the Gold River Property immediately following such denial or entry of judgment becoming a Final Order. Each such holder may amend a proof of claim timely filed in the Bardis Case within Class D2 in order to account for any deficiency to which it is entitled under enforceable and applicable law, *provided* that an amended proof of claim therefor is filed with the Court and served upon the Plan Agent and the Reorganized Debtors within thirty (30) days following such denial or entry of judgment becoming a Final Order.

5.12. <u>Class C1 (Reynen Convenience Claims)</u>. In lieu of treatment within Class D1, and in full satisfaction and discharge of all Allowed Claims within Class C1, each holder of an Allowed

Reynen Convenience Claim that does not make the election described in Section 5.12.1 below, shall receive payment by the Plan Agent from the Reynen Estate on, or as soon as practicable after, the Effective Date, or such later date as such Claim becomes an Allowed Claim, in an amount of Cash equal to five percent (5%) of the amount of such Allowed Convenience Claim, without the accrual of interest, *provided*:

5.12.1. <u>Opt-Out Election</u>. Any holder of a Reynen Convenience Claim may, by written election actually received by counsel for the Reynen Debtors in accordance with instructions provided with the Disclosure Statement, on or prior to the deadline for submission of Ballots, elect to be treated within Class D1.

5.12.2. <u>Opt-In Election</u>. A holder of a Reynen Claim in excess of the maximum amount of Reynen Convenience Claims may, by written election actually received by counsel for the Reynen Debtors in accordance with instructions provided with the Disclosure Statement, on or prior to the deadline for submission of Ballots, reduce such Claim to such maximum amount, in which case such Claim shall be treated as a Reynen Convenience Claim. In the event of such election, such excess amount of such Claim shall be deemed fully released, waived and discharged.

5.13. <u>Class C2 (Bardis Convenience Claims)</u>. In lieu of treatment within Class D2, and in full satisfaction and discharge of all Allowed Claims within Class C2, each holder of an Allowed Bardis Convenience Claim that does not make the election described in Section 5.13.1 below, shall receive payment by the Plan Agent from the Bardis Estate on, or as soon as practicable after, the Effective Date, or such later date as such Claim becomes an Allowed Claim, in an amount of Cash equal to five percent (5%) of the amount of such Allowed Convenience Claim, without the accrual of interest, *provided*:

5.13.1. <u>Opt-Out Election</u>. Any holder of a Bardis Convenience Claim may, by written election actually received by counsel for the Reynen Debtors in accordance with instructions provided with the Disclosure Statement, on or prior to the deadline for submission of Ballots, elect to be treated within Class D1.

5.13.2. <u>Opt-In Election</u>. A holder of a Bardis Claim in excess of the maximum

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

amount of Bardis Convenience Claims may, by written election actually received by counsel for the Reynen Debtors in accordance with instructions provided with the Disclosure Statement, on or prior to the deadline for submission of Ballots, reduce such Claim to such maximum amount, in which case such Claim shall be treated as a Bardis Convenience Claim. In the event of such election, such excess amount of such Claim shall be deemed fully released, waived and discharged.

5.14.   Class D1 (Reynen Unsecured Claims).  The principal amount of all Allowed Claims within Class D1 shall be paid by the Plan Agent as follows:  Each holder of an Allowed Claim within Class D1 shall receive payments upon such Allowed Claim by the Plan Agent from funds of the Reynen Estate on a *pro rata* basis, from time to time as the Plan Agent, with the advice and approval of the Plan Committee, shall determine appropriate, until the earlier of (a) payment in full of such Allowed Claim; or (b) exhaustion of funds and assets of material value within the Reynen Estate.

5.15.   Class D2 (Bardis Unsecured Claims).  The principal amount of all Allowed Claims within Class D2 shall be paid by the Plan Agent as follows:  Each holder of an Allowed Claim within Class D2 shall receive payments upon such Allowed Claim by the Plan Agent from funds of the Bardis Estate on a *pro rata* basis, from time to time as the Plan Agent, with the advice and approval of the Plan Committee, shall determine appropriate, until the earlier of (a) payment in full of such Allowed Claim; or (b) exhaustion of funds and assets of material value within the Bardis Estate.

5.16.   Class E1 (Reynen Interests).  As of the Effective Date, each of the Reynen Excluded Assets shall be deemed revested in the Reorganized Reynens, free and clear of all claims, liens, charges or other rights of creditors of the Reynen Estate, except as expressly set forth in the Plan.

5.17.   Class E2 (Bardis Interests).  As of the Effective Date, each of the Bardis Excluded Assets shall be deemed revested in the Reorganized Bardises, free and clear of all claims, liens, charges or other rights of creditors of the Bardis Estate, except as expressly set forth in the Plan.

**ARTICLE VI**

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

# EXECUTORY CONTRACTS

6.1.    _Generally_.  Unexpired executory contracts, including without limitation unexpired leases, entered into by any of the Debtors prior to their respective Petition Date, shall be treated in the manner set forth in this Article VI.

6.2.    _Assumption and Rejection_.  The assumption and rejection of executory contracts shall be determined as follows:

6.2.1.    _Assumption Schedule_.  Prior to the conclusion of the Confirmation Hearing, the Debtor Group shall file with the Bankruptcy Court, and serve upon the United States Trustee, the Committee, all parties requesting special notice and each party to a contract identified therein, a schedule ("Schedule 6.2.1") identifying each executory contract to be assumed by the Plan Agent, on behalf of either the Reynen Estate or the Bardis Estate, as of the Effective Date, _provided_ that if no such contracts are to be assumed as of the Effective Date, no such schedule need be filed or served.  Subject to the provisions of Section 6.8 below, each executory contract identified on Schedule 6.2.1 shall be deemed assumed as of the Effective Date.

6.2.2.    _Rejection_.  Except as otherwise provided elsewhere in the Plan or by the terms of the Confirmation Order, as of the Effective Date, all executory contracts shall be deemed rejected as of the Effective Date, except for any executory contract (i) which is listed on Schedule 6.2.1 to be assumed, (ii) which has been assumed by the Debtor Group pursuant to an order of the Court granting a motion filed by the Debtor Group prior to the Effective Date, or (iii) which has been rejected pursuant to an order of the Bankruptcy Court or by applicable law prior to the Effective Date.

6.3.    _Cure Amounts_.  Schedule 6.2.1 shall also identify (a) the Cure amount that the Debtor Group believes is owing pursuant to Section 365(b)(1) of the Bankruptcy Code for each executory contract to be assumed by the Plan Agent as of the Effective Date, and (b) the adequate assurance of future performance to be provided with respect to such executory contract, _provided_ that such Schedule 6.2.1.

6.3.1.    _Objections_.  Within ten (10) days following the Effective Date, any party to

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

an executory contract to be assumed as of the Effective Date may file, and serve upon the Reorganized Debtors, the Plan Agent and the Plan Committee, an objection to Schedule 6.2.1 (or the absence of Schedule 6.2.1) to the extent that such party disputes the Cure amount stated for a particular contract, or disputes the adequacy of proffered assurance of future performance. The Reorganized Debtors shall schedule hearings and briefing before the Bankruptcy Court with respect to any such disputes not consensually resolved, as soon as practicable after the Effective Date and in accordance with applicable Bankruptcy Rules.

6.3.2. <u>Resolution</u>. The amounts set forth in Schedule 6.2.1 shall be conclusively presumed to be the amounts of Cure, if any, for each contract identified therein, and it shall be conclusively presumed that no Cure amounts are owed other than those (if any) identified in Schedule 6.2.1, unless, and except to the extent that, an objection is timely filed and served in accordance with the provisions of Section 6.3.1. Any amount of Cure in excess of those set forth in the Schedule 6.2.1 or such timely filed objections shall be fully discharged and barred, and shall not be a liability of either the Reynen Estate or the Bardis Estate to any extent.

6.4. <u>Payment of Cure</u>. Subject to the provisions of Section 6.8 below, any and all Cash payments necessary to Cure a default existing under an executory contract assumed pursuant to the provisions of Section 6.1 herein shall be paid by the Plan Agent, with funds of the Estate assuming such executory contract, on or before the latest of the following dates: (a) within twenty-one (21) days following the Effective Date, or on such later date as to which the holder of the right to such Cure may have consented; (b) on the date that any disputes regarding the Cure amount have been resolved by a Final Order; or (c) on the date when such Cure of defaults becomes due according to contractual, statutory or other terms applicable thereto.

6.5. <u>Approval of Assumption or Rejection</u>. Subject to the provisions of Section 6.8 below, entry of the Confirmation Order shall constitute (i) the approval, pursuant to the provisions of Section 365(a) of the Bankruptcy Code, of the assumption of the executory contracts assumed pursuant to the provisions of Section 6.1 hereinabove; (ii) the extension of time pursuant to the provisions of Section 365(d)(4) of the Bankruptcy Code, to the extent necessary, within which the

Debtors may assume or reject the executory contracts specified in Section 6.1 hereinabove through the Effective Date; and (iii) the approval, pursuant to the provisions of Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts rejected pursuant to the provisions of Section 6.2 hereinabove.

6.6.    <u>Bar Date for Rejection Claims</u>.   Except to the extent that the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules may establish an earlier deadline with regard to the rejection of executory contracts, any Claims arising out of the rejection of executory contracts pursuant to the provisions of Section 6.2 herein must be filed with the Bankruptcy Court and served upon the Plan Agent, the Plan Committee and the Reorganized Debtors no later than the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days after the Plan Agent provides the written notice of rejection set forth in Section 6.8 below, if applicable.  Any Claims not filed within such time will be forever barred from assertion.  Any Claims arising from the rejection of executory contracts (a) may be asserted only to the extent permitted by Section 365(g) of the Bankruptcy Code; and (b) shall be classified and treated within Classes C1, C2, D1 or D2, as the case may be.

6.7.    <u>Assignment of Assumed Contracts</u>.   Any executory contracts assumed by the Plan Agent pursuant to the provisions of this Article VI, or by other orders of the Court, may be assigned to a third party or to the Reorganized Debtors pursuant to the provisions of Section 365 of the Bankruptcy Code at any time after the Effective Date, upon notice and opportunity for hearing provided by the Plan Agent to the other party to such contract.

6.8.    <u>Plan Agent Review</u>.   Notwithstanding the identification of an executory contract within Schedule 6.2.1 to be assumed, no such contract shall be assumed, and no Cure payment shall be made upon such contract, if with respect to such contract (a) a timely objection to cure amount or adequate assurance of future performance is filed and served in accordance with Section 6.3.1 above; (b) the Bankruptcy Court sustains such objection in whole or in part; and (c) the Plan Agent provides written notice to the non-debtor party to such contract, to the Reorganized Debtors and to the Plan Committee within ten (10) Business Days after the entry of an order of the Bankruptcy Court containing such ruling, that such contract shall be rejected.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

7.1.     Plan Effectiveness.   The Plan shall become fully effective and binding upon all parties on the Effective Date.

7.2.     Appointment and Qualification of Plan Agent.   The Plan Agent shall be a person mutually agreed upon by the Committee and the Debtor Group, or, absent such agreement, appointed by the Court upon motion of the Committee, *provided* that:  (a) the Plan Agent shall obtain a fidelity bond for his or her services under the Plan, at the Estates' expense, and shall be independent and have sufficient business experience to make knowledgeable business judgments related to the implementation of the Plan; and (b) at any time after the Effective Date, the Plan Agent may be removed and replaced by the Plan Committee, with the reasonable approval of the Reorganized Debtors.  The Plan Agent shall be compensated for all of his or her services in implementation of the Plan pursuant to terms agreed upon between such Plan Agent and the Plan Committee and reasonably approved by the Reorganized Debtors, as disclosed prior to the conclusion of the hearing regarding approval of the Disclosure Statement.

7.3.     Duties and Powers of Plan Agent.   The Plan Agent shall commence services as of the Effective Date, and shall continue to perform his duties until completion of the final distribution to be made in implementation of the Plan, or until removed pursuant to the terms of the Plan.  The Plan Agent shall act in each of the Reynen Case and the Bardis Case, and shall keep separate accounts, books and records for each of the Estates.   The Plan Agent shall be responsible for the implementation of the Plan, and shall have the following duties, powers and authorities in order to do so:

7.3.1.     Directing Reorganized Debtors.  The Plan Agent shall monitor and direct the efforts of the Reorganized Debtors, who will, to the extent reasonably requested by the Plan Agent and consistent with the terms of the Plan, assist the Plan Agent in implementation of the Plan.  The Plan Agent shall be given full, reasonable cooperation by the Reorganized Debtors, including without limitation providing ready access to the Plan Agent to the books and records of the Reorganized Debtors, Buildco and all Existing Affiliates.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

7.3.2.   <u>Implementation</u>.  The Plan Agent shall take any and all actions reasonably necessary or appropriate in order to implement and administer the terms of the Plan, including without limitation negotiating for and entering into settlements, forbearance agreements and compromises, negotiating and closing asset sales, and generally taking actions consistent with the terms of the Plan, all in accordance with the terms of the Plan.

7.3.3.   <u>Claims</u>.  The Plan Agent shall file, prosecute and settle estate avoidance claims and objections to Claims, and requested estimations of Claims, in accordance with the terms of the Plan, including the terms of Section 7.21 of the Plan.

7.3.4.   <u>Distributions</u>.  The Plan Agent shall make distributions to creditors from time to time in accordance with the terms of the Plan.

7.3.5.   <u>Use of Funds</u>.  The Plan Agent shall manage all funds of the Estates and shall use such funds, as appropriate, to obtain and pay for appropriate insurance coverages and indemnification of the Plan Agent, the Plan Committee, each of the members of the Plan Committee, the Reorganized Debtors, and their respective professionals, and to pay administrative costs of Plan implementation, all in accordance with the terms of the Plan.

7.3.6.   <u>Assets</u>.  The Plan Agent shall collect, receive, manage and dispose of all assets of the Estates.

7.3.7.   <u>Bank Accounts</u>.  The Plan Agent shall open and maintain bank accounts for the benefit of the Estates in accordance with the terms of the Plan.

7.3.8.   <u>Tax Refunds</u>.  In the event that the Debtor Group does not initiate a motion, complaint or other process to resolve the propriety and finality of refunds arising under the Subject Tax Returns prior to the Effective Date, the Plan Agent may take such action to the extent reasonably necessary in order to reach such resolution promptly.

7.4.   <u>Buildco Operations and Budget</u>.  The Plan Agent shall make advances to Buildco in accordance with the terms of the Buildco Budget and any attachment thereto, subject to each of the following terms and conditions:

7.4.1.   <u>Consensual Budget Modifications</u>.  The Buildco Budget shall be modified upon either (a) the request of the Plan Agent and the reasonable approval of the Reorganized

Debtors or (b) the request of the Reorganized Debtors and the reasonable consent of the Plan Agent, *provided* that the consent of the Plan Committee shall be required as to any modification of individual line items of the Buildco Budget that increases such item by more than ten percent (10%) and $25,000.00.

7.4.2.  Build-Outs.  Build-outs of development or construction projects of Existing Affiliates by Buildco will be subject to the reasonable consent of the Plan Agent, after procuring any necessary consents from project lenders on the underlying projects, and after procuring any financing from such project lenders necessary to cover further construction of such projects.  Newco will not be obligated to provide any such funding and will be prohibited from using any Newco funds for any "hard" construction costs (as such term is generally understood in the construction industry) or soft costs in excess of those already provided in the Buildco Budget, unless reasonably approved by the Plan Agent and the Plan Committee.  R&B will be similarly restricted as to use of any funds provided by the Estates prior to the Effective Date, or by the Plan Agent thereafter.  Buildco will complete such project build-outs through 2009, and no later without the reasonable consent of the Plan Agent.

7.4.3.  Tax Returns.  Buildco shall share responsibility with the Reorganized Debtors for timely preparing, filing, defending and prosecuting the Subject Tax Returns for the benefit of the Estates.

7.4.4.  Shared Funding By Estates.  Buildco will receive initial working capital funding from the Estates or entities owned by the Estates pursuant to the terms of the Buildco Budget, with 50% of such funding paid from the Bardis Estate and 50% of such funding paid from the Reynen Estate, *provided* that the Bardis Estate shall reimburse the Reynen Estate for its 50% share of all funds transferred by the Reynen Estate, or entities owned by the Reynen Estate, to Buildco from October 2008 until the Effective Date, and for any allocations to the Bardis Estate of fees and other expenses paid by the Reynen Estate, with all such reimbursements being made as soon as the Bardis Estate, in the Plan Agent's determination, has sufficient available funds with which to make such reimbursements.

7.4.5.   Nonconsensual Budget Modifications.   In the event that either of the following two events occur, the Plan Agent shall have the right to modify the Estates' funding of the Buildco Budget without the consent of the Reorganized Debtors or Buildco, including the right to cease such funding altogether, subject to the Plan Committee's consent, even if doing so will lead to the immediate cessation and liquidation of Buildco's operations: (a) if Buildco is unable to achieve the monthly Ending Cash Balance shown in the Buildco Budget to within an average of ten percent (10%) for any rolling three-month period, or within an average of twenty percent (20%) for any rolling two month period; or (b) commencing on the earlier of February 1, 2009 or the Effective Date, if Buildco is unable to achieve within twenty percent (20%) of the Cumulative Net Revenue shown in the Buildco Budget beginning October 1, 2008 through December 31, 2009, measured cumulatively at each calendar month end within such timeframe.

7.4.6.   Prohibited Activities.  Absent the consent of the Plan Agent, Newco shall not be used for any purpose other than providing Assistance Efforts and neither the Plan Agent nor the Estates shall be obligated to fund any activities of either R&B or Newco other than Assistance Efforts.   The Plan Agent shall be provided reasonable access to Buildco employees and shall be granted access to any Buildco information regarding the activities and time devoted thereto of Buildco employees upon the reasonable request of the Plan Agent.   In addition, if Buildco determines that the employment of any of its employees should be reduced to part-time employment or determines that such employment is no longer necessary to provide the Plan Agent with Assistance Efforts, or if the Plan Agent reasonably determines that the personnel levels of R&B or Newco that are being funded by the Estates are excessive, then the Estates' funding of the Buildco Budget shall be reduced to reflect the lower salary expenses of Buildco, except to the extent already anticipated in the Buildco Budget.

7.4.7.   Closure.  Once its Assistance Efforts with respect to the Subject Tax Returns and its project buildouts are completed, Newco will close, unless the Reorganized Debtors and the Plan Agent agree to continue or otherwise dispose of Newco's operations.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

7.5. <u>Plan Committee</u>. The Plan Committee shall be comprised of three or five unsecured creditors selected by the Committee, disclosed in the Disclosure Statement and approved by the Bankruptcy Court in connection with confirmation of the Plan, and shall become effective as of the Effective Date. The Plan Committee shall operate pursuant to bylaws disclosed in the Disclosure Statement and approved by the Bankruptcy Court in connection with confirmation of the Plan, which bylaws shall provide for, among other things, the resignation and replacement of members of the Plan Committee, the compensation of such members and reimbursement of expenses of such members. Neither members of the Plan Committee nor the representatives of such members (including employees, attorneys, accountants, consultants and the like) shall be held personally liable for any claim asserted against the Plan Committee, any member of the Plan Committee, the representatives of any member of the Plan Committee, the Plan Agent or any of the Reorganized Debtors. The Plan Committee shall oversee the decisions of the Plan Agent, and shall have the following rights and duties:

7.5.1. removing the Plan Agent with the reasonable consent of the Reorganized Debtors;

7.5.2. selecting a successor Plan Agent with the reasonable consent of the Reorganized Debtors;

7.5.3. approving the retention of legal counsel and financial advisors for the Plan Agent, as nominated by the Plan Agent, the costs of which shall be paid by the Estates and allocated between the Estates in accordance with other terms of the Plan;

7.5.4. approving any sale proposed by the Plan Agent where the net sales proceeds are eighty-five percent (85%) or less than the Estimated Liquidation Case Amount net proceeds, or exceed $250,000 in net proceeds;

7.5.5. reasonably approving any transfer to the Reorganized Debtors or their affiliates, as proposed by the Plan Agent;

7.5.6. approving the initiation of any litigation (not including the initiation of an objection to, or estimation of, a creditor claim, *provided, however*, that the initiation of claims objections or estimations by the Reorganized Debtors shall be subject to the approval

of the Plan Agent, subject to the provisions of Section 7.21 of the Plan), or the compromise or settlement of any litigation or controverted matters proposed by the Plan Agent, to the extent that it is (a) of a creditor claim in a filed or scheduled amount in excess of $5,000,000.00; or (b) of litigation commenced or to be commenced by the Plan Agent or either of the Estates seeking recovery in excess of $100,000.00;

 7.5.7. providing consent to modifications of the Buildco Budget to the extent required under Sections 7.4.1, 7.4.2 and 7.4.5 of the Plan;

 7.5.8. reasonably approving the filing of the Subject Tax Returns, to the extent such action is proposed to be taken after the Effective Date;

 7.5.9. temporarily exercising the powers and authorities of the Plan Agent, should the existing Plan Agent be removed or become incapacitated, but only until a replacement Plan Agent is appointed, and in connection therewith, prompt efforts shall be made by the Plan Committee to select and install such replacement Plan Agent; and

 7.5.10. retaining counsel and other professionals with approval of the Bankruptcy Court in the event of any dispute between the Plan Committee and the Plan Agent, but only for the purpose of advising the Plan Committee and representing the Plan Committee with respect to that particular dispute.

7.6. <u>Reorganized Debtors' Duties</u>. After the Effective Date, the Reorganized Debtors shall have the following duties to their respective Estates (collectively, the "Assistance Efforts"), and no others:

 7.6.1. <u>In General</u>. Subject to each of the conditions and limitations set forth elsewhere in this Section 7.6, during their respective Sale Periods, the Reorganized Debtors, individually and through Buildco, shall diligently and continuously use their reasonable best efforts to assist the Plan Agent in the implementation and administration of the Plan, specifically including providing material assistance to the Plan Agent in the marketing and sale or other disposition of the assets of the Estates, objecting to proofs of claim filed in the Chapter 11 Cases, prosecuting and trying to conclusion, if necessary, such objections to proofs of claims, assisting the Plan Agent in identifying avoidance claims that may be

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

available to the Estates, and taking actions necessary to cause deficiency claims of secured creditors holding personal guarantees of the Debtor Group to be allowed in appropriately reduced amounts, and the prosecution, if necessary, of the Subject Tax Returns.

7.6.2. <u>Sale Efforts</u>. The Reorganized Debtors shall use their best reasonable efforts to assist the Plan Agent in the sale or other disposition of all assets of their respective Estates other than the Excluded Assets. Such efforts shall include consultations with respect to pricing and marketing, and assistance in the negotiation of proposed sales or other dispositions. Such services shall not include the services of a licensed broker or agent (who may be employed by the Plan Agent separately), and shall not require any expenditure of costs by the Reorganized Debtors unless promptly reimbursed or advanced by the Plan Agent from funds of the Estates.

7.6.3. <u>Subject Tax Returns</u>. The Reorganized Debtors, together with Buildco, shall use their best reasonable efforts, energies and resources, to defend and prosecute the Subject Tax Returns (including, but not limited to, the amended income tax returns and claims for refund of the SPEs in order to obtain permitted tax refunds for the benefit of the Estates), and to obtain the maximum amount possible on account of the Estates' tax refunds, *provided* that such efforts shall not include any expenditure of costs by the Reorganized Debtors or Buildco unless promptly reimbursed or advanced by the Plan Agent from funds of the Estates. In particular, the Reorganized Debtors will prepare and file Form 1045 and/or amended income tax returns on Form 1040x for the 2005 and 2006 tax years (specifically including Form 1045 which carries back 2007 losses to the 2005 tax year) in a manner required by the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"). The Reorganized Debtors will use its best efforts to cause the Internal Revenue Service to promptly audit and review such returns and obtain a "determination" (within the meaning of Section 1313(a) of the Internal Revenue Code) or other like final decision with respect to such tax years including, but not limited to, by means of Bankruptcy Code Section 505, a closing agreement, or other process allowable pursuant to the Internal Revenue Code and/or the Bankruptcy Code. The Reorganized Debtors will take actions to reasonably ensure that

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
21860_3.DOC

all such tax refunds will be paid directly to the Plan Agent. The Plan Agent shall have the right to review all such tax returns prior to filing, if filed after the Effective Date, and the Reorganized Debtors and Buildco shall make changes to such tax returns prior to their filing as reasonably requested by the Plan Agent.

7.6.4.    Claims Review and Objections. The Reorganized Debtors shall assist in the review of, objection to, and requested estimation of, Claims filed against the Estates, as warranted, *provided* that the Reorganized Debtors shall have the right, but not the obligation, to file and prosecute formal objections to, or requests for estimations of, Claims in accordance with the terms of Section 7.21 of the Plan.

7.6.5.    Estate Property. To the extent that the Reorganized Debtors come into possession of any proceeds of the sale or other disposition of the Estates' assets or otherwise comes into possession of any assets or monies belonging to either Estate or the Plan Agent, the Reorganized Debtors shall promptly turn over all such proceeds to the Plan Agent.

7.7.    Reorganized Debtors' Compensation and Incentives. Subject to the provisions of Section 7.8 of the Plan with respect to suspension of payments, the Reorganized Debtors shall be paid compensation and incentives by the Plan Agent, from funds of the Estates, as follows:

7.7.1.    Sale Period Compensation. During their respective Sale Periods, on the continuing condition that the Reynen Debtors or the Bardis Debtors, as the case may be, continue to devote their full-time, substantial (to the extent needed) efforts to the sale of assets of the Estates (other than Excluded Assets), the Reynen Debtors and the Bardis Debtors will be paid from funds of their respective Estates (subject to the Estates having sufficient funds, after establishing reasonable reserves, to make such payments), as compensation for such efforts (and in lieu of any salaries or any form of direct or indirect compensation or reimbursement (other than reimbursements to be made by the respective Estates for the reasonable out-of-pocket expenses paid by the Reorganized Debtors for expenses reasonably and necessarily incurred in connection with the Assistance Efforts) that would otherwise be paid by any Existing Affiliate, including Buildco), in the following

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

manner: Beginning as of the Effective Date and ending May 31, 2010,[1] $30,000 per month for the Reynen Debtors and $30,000 per month for the Bardis Debtors, until December 31, 2009, and then $15,000 per month for the Reynen Debtors and $15,000 per month for the Bardis Debtors, for each of the following five (5) months, totaling $315,000 for each of the Reynen Debtors and the Bardis Debtors, or $630,000 in total (the "Sale Period Compensation"); *provided* that (i) by mutual agreement, the Plan Agent and the Reynen Debtors and/or the Bardis Debtors, as appropriate, may extend the Sale Period as to one or both of the Estates upon such terms as each approves and with consent from the Plan Committee; and (ii) absent such agreement, the Reorganized Debtors' obligations to provide the aforementioned sale efforts will terminate upon the expiration of the applicable Sale Period.

   7.7.2.   <u>Claim Reduction Incentives</u>.   The Reorganized Debtors shall collectively earn and be paid by the Plan Agent from funds of the Estates (and shall share between the Bardis Debtors and the Reynen Debtors on a 50/50 basis), cash incentives (the "Claim Reduction Incentives") equal to a percentage of the differences between the Estimated Liquidation Case Amounts and the actual allowed amount of Claims, according to the Claim Reduction Table.   In order to qualify for such measurements, any claim reduction must be accomplished no later than March 31, 2010, *provided* that the Plan Agent shall have discretion to extend such deadline as he deems necessary or reasonable, and *provided* further, the Plan Agent shall not unreasonably withhold his or her consent to such extensions on account of events outside of the control of the Reorganized Debtors, e.g., protracted court process or appeals.   The Claim Reduction Incentives will be paid to the Reorganized Debtors or their nominees as soon as practicable after each distribution is made to holders of Allowed Claims in Class D of the Plan.   Interest income shall be earned and accrue on the Claim

---

[1] Should the Effective Date be subsequent to May 1, 2009, the Sale Period Compensation monthly payments will be adjusted, for the Reynen Debtors and the Bardis Debtors separately, so that the initial payment is increased to include all periods from May 1, 2009 to the Effective Date, and decreased by the Offsetting Personal Expenses of the Reynen Debtors and the Bardis Debtors, respectively.   The total Sale Period Compensation will not exceed $315,000, less applicable Offsetting Personal Expenses, for each of the Reynen Debtors and the Bardis Debtors regardless of when the Effective Date occurs, absent the consent of the Plan Committee and the Plan Agent.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Reduction Incentives beginning ten (10) calendar days after disbursement of each distribution to Class D creditors under the Plan and shall end upon receipt of the Claim Reduction Incentives by the Reorganized Debtors. In no circumstance shall the Reorganized Debtors receive a Step Incentive Payment to the extent that the amount of such Step Incentive Payment would exceed thirty percent (30%) of the amount that the Estates (on an aggregate basis) would have paid in distributions under the Plan on account of the associated Deficiency Reduction Amount.

       7.7.3.    <u>Tax Refund Incentives</u>. Subject to the provisions of Sections 7.8 and 7.9 of the Plan regarding the timing of payments, the Reorganized Debtors shall be paid by the Plan Agent from funds of the Estates cash incentives based upon Net Refunds received by the Estates on account of the Subject Tax Returns (the "Tax Refund Incentives"), as follows:

           7.7.3.1.    <u>Reynen Debtors</u>. For the Reynen Debtors, zero percent (0%) for Net Refunds arising from the Reynen Tax Returns equal to or below $7,000,000; five percent (5%) of such Net Refunds between $7,000,001 and $15,000,000, inclusive; and eleven percent (11%) of such Net Refunds over $15,000,000.

           7.7.3.2.    <u>Bardis Debtors</u>. For the Bardis Debtors, zero percent (0%) for Net Refunds arising from the Bardis Tax Returns equal to or below $10,500,000; five percent (5%) of such Net Refunds between $10,500,001 and $18,500,000, inclusive, less $397,460 from such five percent, and eleven percent (11%) of such Net Refunds over $18,500,000.

       7.7.4.    <u>Death or Incapacity of John D. Reynen or Christo Bardis</u>. In the event that John D. Reynen or Christo Bardis dies or otherwise becomes permanently incapacitated prior to the receipt of the Tax Refund Incentives, then: (a) Judith Reynen or Sara Bardis, as the case may be, shall continue to be entitled to receive the Tax Refund Incentives in accordance with the terms of the Plan; (b) the obligation of the Estate to pay the Sale Period Compensation to the Reynen Debtors or the Bardis Debtors, as the case may be, as to future months, shall terminate as of the date of such death or permanent incapacity; and (c) the Claim Reduction Incentive shall be fixed as to the Reynen Debtors' or the Bardis Debtors'

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Share, as the case may be, as of the date of such death or permanent incapacity, if such date shall occur prior to completion of deficiency reductions.

7.8.     Suspension of Reorganized Debtors' Payments.  Subject to the last sentence of this section, but notwithstanding any provisions of any other section of the Plan, if at any time the Plan Agent determines, in the exercise of his reasonable discretion, that the Reorganized Debtors or Buildco have materially failed, or are materially failing, to perform their obligations under the terms of the Plan (the "Default Event"), then with the consent of the Plan Committee, the Plan Agent may withhold or terminate any further payments to be made under Sections 7.4 or 7.7 of the Plan to Buildco, the Reynen Debtors, the Bardis Debtors, or all, consistent with the reasonable determination made by the Plan Agent as to whose failure to perform is involved, including but not limited to suspending or terminating:  (i) any further payments of Sale Period Compensation, (ii) any further funding of Buildco, (iii) payment of any further Claim Reduction Incentives, and (iv) payment of any further Tax Refund Incentives.  If the Bardis Debtors, the Reynen Debtors or Buildco dispute the determination made by the Plan Agent, then each may bring the matter before the Bankruptcy Court on a shortened-notice basis for a determination by the Bankruptcy Court of whether the discretion exercised by the Plan Agent in making such a determination was unreasonable.  The Plan Agent may take action consistent with the first sentence of this section only if:  (a) any suspension of payments or funding by the Plan Agent is directly related to the Default Event (e.g., a failure to provide appropriate efforts related to the sale of the Estates' assets, but not related to efforts to obtain tax refunds, may trigger a suspension of payments of Sale Period Compensation, but not a suspension of Tax Refund Incentives); and (b) prior to any suspension of payments or funding, the Plan Agent (i) has provided no less than fifteen (15) days' written notice of such suspension and the reasons therefor and (ii) has stipulated to a shortening of time to permit a hearing before the Bankruptcy Court with respect to the Plan Agent's determination on no more than seven (7) days' notice.

7.9.     Timing of Payments of Tax Refunds.  The Tax Refund Incentives shall be paid to the Reorganized Debtors or as they may direct, as soon as practicable after receipt of tax refunds by the Estates and clearance of any potential Internal Revenue Service audit, California Franchise Tax

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Board audit, and the audit of any other relevant taxing authority; *provided*, *however*, that, subject to the last sentence of this Section 7.9, (a) the Reorganized Debtors will not be entitled to a payment of the Tax Refund Incentives, and (b) no tax refunds shall be distributed by the Plan Agent to any Claimants or otherwise used by the Plan Agent in any respect, until the applicable statute of limitations period has expired or the tax liability has been determined by a final non-appealable decision, in both cases having the legal effect of preventing any taxing authority from seeking a return of any portion of the received tax refund that forms the basis of such distribution, use or Tax Refund Incentive. If, notwithstanding the foregoing, any of the Reorganized Debtors are paid a Tax Refund Incentive with respect to a tax refund that is later returned or utilized to satisfy a tax liability of the Estates, or there is another event that reduces the amount of the Net Refunds (e.g., a tax deficiency of the Estates), the Reorganized Debtors who received the Tax Refund Incentive shall immediately return the appropriate amount of the overpaid incentive payment to the respective Estate in order to return the Estates to the same economic position as if the appropriate amount of Tax Refund Incentives had been paid, after taking into account the reduction of the Net Refunds amount. Interest income at the same rate earned by the Plan Agent on such funds will be earned and accrue for the benefit of the Reorganized Debtors on the Tax Refund Incentives beginning ten (10) calendar days after receipt of the Net Refunds by the Plan Agent and ending upon disbursement to the Reorganized Debtors. Notwithstanding the provisions of the first sentence of this Section 7.9, the Plan Agent may distribute some or all of funds received as tax refunds, to both holders of Allowed Claims and the Reorganized Debtors, *provided* that both the Plan Agent and the Reorganized Debtors may reasonably consent to such distribution, and *provided further* that the Reorganized Debtors, on the one hand, and unsecured creditors, on the other hand, receive as their distributions the same percentage of overall entitlement.

      7.10.   <u>Revesting of Excluded Assets</u>. As of the Effective Date, full title and ownership of each of the Reynen Excluded Assets shall be revested in the Reynen Debtors, and full title and ownership of each of the Bardis Excluded Assets shall be revested in the Bardis Debtors.

      7.11.   <u>Reorganized Debtors' Assets Not Property of the Estates</u>. Notwithstanding any other provision of the Plan or order of the Bankruptcy Court, each and every right, title, interest or

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

asset acquired by the Reorganized Debtors on or after the Effective Date, including without limitation the Excluded Assets and all proceeds, profits, income and revenue arising from personal services or investments rendered or made on or after the Effective Date, shall be owned and acquired by the Reorganized Debtors on their own accounts, and shall not be property of either of the Estates for any purpose. All such rights, title, interests and assets shall be free and clear of any Claims against either of the Estates, and any claims or obligations of any kind arising prior to the Effective Date.

7.12. <u>Vesting of Estate Property Other Than Excluded Assets</u>. Except as provided in Section 7.10 of the Plan with respect to the Excluded Assets, as of the Effective Date, pursuant to the provisions of Section 1123(b) of the Bankruptcy Code and otherwise, all title, ownership, possession and interests of the Reynen Estate in any assets shall be deemed preserved and fully vested in the Reynen Estate, and all title, ownership, possession and interests of the Bardis Estate in any assets shall be deemed preserved and fully vested in the Bardis Estate. All such assets shall be free and clear of any and all claims, interests, liens, security interests and obligations other than those that are expressly created or preserved by the provisions of this Plan or the Confirmation Order. Any and all of such assets may be sold, transferred, compromised or otherwise disposed of by the Plan Agent on behalf of the respective Estate on or after the Effective Date in accordance with the terms of the Plan, subject to the effect of any liens or security interests encumbering such assets to the extent expressly created or preserved under the terms of this Plan.

7.13. <u>Creditors' Committee</u>. The Committee shall be dissolved and terminated as of the Effective Date.

7.14. <u>Professional Retention and Compensation</u>. Post-Effective Date retention and compensation of professionals shall be governed by the following provisions:

7.14.1. <u>Reorganized Debtors' Professionals</u>. The Reorganized Debtors shall be entitled to continue to employ and retain such professionals as approved by the Bankruptcy Court prior to the Effective Date without further order of the Bankruptcy Court, and shall also be entitled to employ and retain other or additional professionals with the approval of the Bankruptcy Court.

7.14.2.    Plan Agent's Professionals.  The Plan Agent shall be entitled to employ and retain such professionals as approved by the Bankruptcy Court for retention by the Committee prior to the Effective Date without further order of the Bankruptcy Court, and shall also be entitled to employ and retain other or additional professionals with the approval of the Bankruptcy Court.

7.14.3.    Plan Committee's Professionals.  The Plan Committee shall be entitled to employ and retain professionals with the approval of the Bankruptcy Court, but only in the event of a dispute between the Plan Committee and the Plan Agent and such professionals shall only be retained for the purpose of representing the Plan Committee in connection with such dispute.

7.14.4.    Compensation.  The Plan Agent shall pay compensation and expense reimbursements requested by all such professionals retained by the Reorganized Debtors, the Plan Committee and the Plan Agent, as well as his or her own requested compensation and expense reimbursements, for all services rendered by the Plan Agent or any of such professionals in the implementation of the Plan, only upon (a) ten (10) Business Days' notice by such professionals or the Plan Agent to the Reorganized Debtors, the Plan Agent and the Plan Committee, or (b) if a written objection is received from the Plan Agent, the Reorganized Debtors or the Plan Committee within such ten (10) Business Days' period, an order of the Bankruptcy Court following no less than ten (10) days' notice and opportunity for hearing to such parties.

7.14.5.    Allocation.  To the extent that post-Effective Date services of the Reorganized Debtors' professionals, the Plan Agent or the Plan Agent's professionals conferred a material benefit on both Estates, payment of fees and costs on account of such services shall be allocated and paid by the two Estates on a fair and equitable basis.  Such allocation shall be determined by the Plan Agent, upon fourteen (14) days' written notice to the Plan Committee, the United States Trustee and the Reorganized Debtors, or by the Bankruptcy Court in the event that an objection thereto is filed and served by the Plan Committee, the United States Trustee or the Reorganized Debtors within such notice period.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Notwithstanding any of the foregoing, the Estate for which a professional is retained pursuant to Section 327 of the Bankruptcy Code shall be liable to such professional for the full amount of its allowed compensation and expense reimbursements, regardless of allocations between the Estates, and both Estates shall be liable for the Plan Agent's fees and expenses, to the extent payable under the terms of this Section 7.14.

7.15. <u>Preservation of Causes of Action</u>. Each and every claim, right, cause of action, claim for relief and other entitlement held by either the Reynen Estate or the Bardis Estate as of the Effective Date, whether arising under Sections 502, 506, 510, 541, 542, 543, 544, 545, 550, 551, 552 or 553 of the Bankruptcy Code or arising otherwise (including without limitation claims arising prior to the Petition Date), other than those waived or released by the express terms of the Plan or the Confirmation Order, shall be deemed fully preserved and vested in the respective Estates, and such claims and causes of action shall be administered by the Plan Agent.

7.16. <u>Reserves</u>. Prior to making a *pro rata* distribution (the "Triggering Distribution") upon Allowed Claims within a Class, the Plan Agent shall establish a reserve for Claims within that Class to the extent that such Claims are Disputed Claims or are Claims for which payments are to be deferred in accordance with the terms of the Plan, as follows:

7.16.1. <u>Calculation</u>. The amount reserved for each such Claim shall be on the same *pro rata* basis as the Triggering Distribution, based upon the lesser of (a) the amount asserted by the holder of the Claim to be owing and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the Plan Agent or the Reorganized Debtors, which motion may be made initially or from time to time.

7.16.2. <u>Reserve Maintenance And Interest</u>. Such reserves may be established and maintained by the Plan Agent as accounting entries, without the necessity of transfers of funds out of the Estates' general accounts, *provided* that sufficient funds are maintained in such general accounts to support the accounting entries. Any interest earned upon such reserved funds shall be earned for the account of, and retained by, the Estates for their general purposes, and not for the benefit of the holder of the Disputed or unmatured Claim.

7.16.3. <u>Release of Reserved Funds</u>. Reserved funds shall be released as Disputed

Claims are resolved by a Final Order or as unmatured Claims mature, as the case may be, as follows: (a) a payment to the holder of such Claim, calculated on the same *pro rata* basis as the Triggering Distribution, based upon the portion, if any, of the Claim that has become a matured Allowed Claim, by virtue of a Final Order; and (b) retention by the respective Estate, for its general purposes, of all other funds reserved for such Claim.

7.17.  Unclaimed Distributions.  If any holder of a Claim cannot be located after reasonable efforts by the Plan Agent, or fails to deposit or accept a distribution tendered by the Plan Agent to such holder with respect to such Claim within ninety (90) days following the date of such distribution, then the distribution with respect to such holder shall be cancelled, such Claim shall be deemed fully released, waived and discharged, and there shall be no further distributions required with respect to such Claim.

7.18.  *De Minimus* Distributions.  The Plan Agent shall not be required to make any payment of less than $100.00 on account of an Allowed Claim within Class D1 or D2, unless it is the final payment to be made on account of such Allowed Claim under the terms of the Plan.  In the event that a *pro rata* distribution with respect to such an Allowed Claim would otherwise require such a payment of less than $100.00, the Plan Agent may withhold such payment and aggregate it with a subsequent payment upon such Allowed Claim.

7.19.  Compliance With Tax Requirements.  In connection with the Plan, to the extent applicable, the Plan Agent shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions made pursuant to the Plan shall be subject to, and reduced by, such withholding and reporting requirements.  The Plan Agent shall be deemed to be authorized to take any actions that may be necessary or appropriate in order to comply with such withholding and reporting requirements, including but not limited to requiring recipients to fund the payment of such withholding as a condition to delivery.  Notwithstanding any other provision of the Plan, each person or entity receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income withholding and other tax obligations.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

7.20.   Quarterly Fees.  At all times on and after the Effective Date, the Plan Agent shall pay from funds of the Estates, for deposit into the United States Treasury, the quarterly fees owing to the United States Trustee pursuant to the provisions of Section 1930(a)(6) of Title 28 of the United States Code, for each calendar quarter (including any fraction thereof) in each such case that has not yet been closed by the entry of a final decree, converted or dismissed.

7.21.   Objections to Claims.  On and after the Effective Date, only the Plan Agent and the Reorganized Debtors may file, serve, prosecute or compromise objections to any Claim, or request estimations of Claims, *provided* that the Reorganized Debtors may not file an objection to a Claim, or request the estimation of a Claim, after the Effective Date unless (a) such objection is approved in advance by the Plan Agent, or (b) the Reorganized Debtors bear all costs, including attorneys' fees, incurred in filing and prosecuting such objection or request for estimation.  In the event that the Reorganized Debtors proceed under the provisions of subpart (b) herein, they shall be entitled to recover such costs and attorneys' fees from the Estates to the extent of any measurable benefit conferred upon the Estates (by reducing the amount distributable upon such Claim, as Allowed) by the prosecution and resolution of such objection or request for estimation.

7.22.   Other Actions.  On and after the Effective Date, the Plan Agent, the Reorganized Debtors, the Plan Committee, and other parties, as appropriate, shall execute and deliver such documents, and take such actions, as reasonably necessary to complete and evidence the transactions contemplated and described in this Plan, *provided* that if any such party fails to so act, the Plan Agent and the Reorganized Debtors shall be authorized to so act on such party's behalf, pursuant to an order of the Court issued on no less than ten (10) days' notice under the provisions of Section 1142(b) of the Bankruptcy Code.

7.23.   Term of Injunctions and Stays.  Unless otherwise provided herein or by an order of the Court, any injunctions or stays issued or effective as of the Confirmation Date in either the Reynen Case or the Bardis Case, whether under the provisions of Sections 105 or 362 of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date.

7.24.   Discharge of Reorganized Debtors.  Notwithstanding any other provision of the Plan or of the Bankruptcy Code, each of the Reorganized Debtors shall be discharged of all Claims, liens

49

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

obligations and charges of any kind existing or arising prior to the Effective Date, as of December 31, 2009. The Reorganized Debtors waive any right to seek an earlier discharge, and there shall be no right of any party in interest to seek to delay such discharge. Without limiting the generality of the foregoing, none of the Reorganized Debtors shall be liable for any claims or obligations of either of the Estates arising after the Effective Date in any event. The contents of this Section 7.24 shall also be contained in the Confirmation Order, and the confirmation process and notice of the Confirmation Hearing shall serve as adequate notice and hearing in order to satisfy the requirements of Section 1141(d)(5)(A) of the Bankruptcy Code, to the extent applicable, for the inclusion of such contents in the Confirmation Order.

7.25. <u>Permanent Satisfaction And Injunction</u>. The rights afforded herein, and the treatment of all Claims and Interests set forth herein, shall be in full exchange for, and in complete satisfaction, discharge and release of, all Claims and Interests of any kind or nature whatsoever, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, prior to the Effective Date, including without limitation any Claims, or interest on Claims, accruing on or after the Debtor Groups' respective Petition Dates, against any of the Debtors, the Estates, or any assets or property of either of the foregoing persons. Except as, and to the extent, expressly provided in the Plan, (a) all such Claims against the Debtors, the Estates or any assets or property of either of the foregoing persons, shall be deemed fully and finally satisfied, discharged and released; and (b) all persons shall be fully and finally barred, enjoined and precluded from asserting against any of the Reorganized Debtors, the Plan Agent or any of their respective assets, any such Claims or Interests, or any other claims or interests based upon any act or omission, transaction, agreement, right, privilege, duty, entitlement, obligation or other event or activity of any kind or nature whatsoever that occurred prior to the Effective Date.

7.26. <u>Indemnification and Insurance</u>. The Plan Agent and the Plan Committee and its members shall be indemnified by the Estates with respect to their implementation of the Plan and their post-Effective Date activities in connection with the administration and implementation of the Plan, but not as to their own gross negligence or intentional misconduct. To the extent reasonably available, the Plan Agent shall purchase errors and omissions insurance coverage for the Plan Agent,

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
21860_3.DOC

the Plan Committee and its members and the Reorganized Debtors, and their respective professionals, *provided* that the Plan Agent shall not be required to include the Reorganized Debtors within such coverage if the incremental cost of such coverage exceeds, in the aggregate for all Reorganized Debtors, $25,000 per year.

7.27.  <u>Inter-Estate Release</u>.  As of the Effective Date, all Claims held by the Reynen Debtors or the Reynen Estate as against the Bardis Debtors or the Bardis Estate, and all Claims held by the Bardis Debtors or the Bardis Estate as against the Reynen Debtors or the Reynen Estate, shall be deemed fully released, waived and discharged, except as expressly set forth in the Plan.

7.28.  <u>Estimation of Claims</u>.  At any time after the Effective Date, the Plan Agent or the Reorganized Debtors may request estimation of a Disputed Claim, including without limitation any Claim that is contingent or unliquidated in amount, pursuant to the provisions of Section 502(c) of the Bankruptcy Code.  Such request may be made by motion or complaint, and may seek such estimation for all purposes, including final allowance of the Claim for purposes of distributions within Classes D1 and D2.

7.29.  <u>Postconfirmation Reports</u>.  Within twenty (20) days following the end of each calendar quarter occurring after the Effective Date and until, as to each case separately, the case has been closed by the entry of a final decree, converted or dismissed, the Plan Agent shall file with the Bankruptcy Court, and serve upon the Postconfirmation Recipients, a postconfirmation report, the purpose of which is to explain the progress made toward full administration of the Plan.  The first such report shall be filed for the portion of the calendar quarter from the Effective Date until the end of the calendar quarter in which it occurs.  Said reports shall include a statement of receipts and disbursements, with the ending cash balance, for the entire calendar quarter, and the reports shall contain sufficient information to enable the Bankruptcy Court to determine:  (a) whether the Confirmation Order has become a Final Order; (b) whether deposits, if any, required by the Plan have been distributed; (c) whether any property proposed by the Plan to be transferred has been transferred; (d) whether the Plan Agent has assumed the duties and responsibilities contemplated under the Plan; (e) whether payments under the Plan have commenced; (f) whether accrued fees owing under 28 U.S.C. § 1930(a)(6) have been paid; and (g) whether all motions, contested matters

51

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
21860_3.DOC

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

and adversary proceedings have been finally resolved. Said reports shall also contain a brief summary of the status of any pending litigation regarding the disputed lien asserted by Travelers against the Bardis Tax Refund, *provided* that the Plan Agent shall not be required to provide in such summary any confidential, proprietary or litigation strategy information.

7.30. <u>Estate Compromises</u>. Subject to the provisions of Section 7.5.6 of the Plan, the Plan Agent may enter into a compromise of any dispute or controversy on behalf of the Reynen Estate or the Bardis Estate without the necessity of Bankruptcy Court approval, *provided* that any settlement of the disputed lien asserted by Travelers against the Bardis Tax Refund may be reached only after ten (10) days' written notice and opportunity for hearing provided to holders of Allowed Claims within Class D2 and, in the event that a written objection is filed and served by such a holder within such ten-day notice period, entry of an order of the Bankruptcy Court approving such settlement.

**ARTICLE VIII**

**RETENTION OF JURISDICTION**

8.1. <u>Generally</u>. With respect to each of the Reynen Case and the Bardis Case, until such case has been closed, and thereafter upon a motion to reopen the case, the Bankruptcy Court shall have exclusive jurisdiction of all matters concerning the allowance of Claims and Interests, and the interpretation and implementation of the Plan, pursuant to, and for all purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation the following purposes:

8.1.1. to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending on the Effective Date, and the allowance of Claims resulting therefrom;

8.1.2. to determine any and all claims, causes of action, adversary proceedings, applications and contested matters which are pending on the Effective Date or which are thereafter commenced by or related to the Reorganized Debtors, the Plan Agent or the Estates;

8.1.3. to hear and determine any objection to, or requests for estimation of, Claims;

8.1.4.   to enter and implement such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

8.1.5.   to issue such orders in aid of execution of the Plan, to the extent authorized by the provisions of Section 1142 of the Bankruptcy Code;

8.1.6.   to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

8.1.7.   to hear and determine all applications for Professional Fees accrued through the Effective Date, and for professional fees incurred thereafter in the event of a timely objection;

8.1.8.   to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

8.1.9.   to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code; and

8.1.10.   to enter a final decrees closing said cases, and orders reopening said cases as appropriate.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1.   <u>Exemption from Transfer Taxes</u>. Pursuant to the provisions of Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Debtor to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan (including without limitation any and all transfers to the Reorganized Debtors or Buildco as contemplated by the Plan), shall not be subject to any stamp, sales, transfer, real estate transfer, mortgage recording or other similar tax.

9.2.    <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of each of the Reorganized Debtors and all holders of Claims and Interests and their respective successors and assigns, whether or not they have accepted the Plan.

9.3.    <u>Ratification</u>.  Subject to all of the terms of this Plan, the Confirmation Order shall be deemed to ratify all transactions effectuated by the Debtor Groups during the pendency of the Reynen Case and the Bardis Case to the extent either in the ordinary course of business or pursuant to an order of the Court.

9.4.    <u>Notices</u>.  Any notice required or permitted to be provided under the terms of the Plan shall be in writing and shall be served by the quickest practical available method of delivery (which shall be conclusively presumed to be (a) by hand delivery or (b) by facsimile or electronic mail with hard copy to follow by overnight courier, as to the Reorganized Debtors, the Plan Agent and the Plan Committee).  All notices to the Reorganized Debtors, the Plan Committee or the Plan Agent shall be delivered as follows (or as otherwise directed by such party by notice given pursuant hereto):

<u>To the Reynens</u>:

      c/o Reynen and Bardis
      10630 Mather Blvd.
      Mather, CA 95655
      Telephone: (916) 366-3665
      Facsimile: 916/364-3570
      Email: <u>john.reynen@rbhome.us</u>

*With a copy to:*

      Merle C. Meyers, Esq.
      Edie Walters, Esq.
      MEYERS LAW GROUP, P.C.
      44 Montgomery Street, Suite 1010
      San Francisco, CA  94104
      Telephone:  (415) 362-7500
      Facsimile:  (415) 362-7515
      Email:  <u>mmeyers@mlg-pc.com</u>
             <u>ewalters@mlg-pc.com</u>

<u>To the Bardises</u>:

      c/o Reynen and Bardis
      10630 Mather Blvd.
      Mather, CA 95655
      Telephone: (916) 366-3665

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Facsimile: 916/364-3570
Email: christo.bardis@rbhome.us

*With a copy to:*

David M. Meegan, Esq.
MEEGAN, HANSCHU & KASSENBROCK
11341 Gold Express Drive, Suite 110
Gold River, CA 95670
Telephone: (916) 925-1800
Facsimile: (916) 889-8359
Email: DMeegan@mhksacto.com

To the Plan Committee:  [To be determined]

*With a copy to:*

Marc A. Levinson, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall
Sacramento, CA 95814-4497
Telephone: (916) 447-9200
Facsimile: (916) 329-4900
Email: malevinson@orrick.com

To the Plan Agent:

Hank M. Spacone
P.O. Box 255264
Sacramento, CA 95865
Telephone: (916) 489-6250
Facsimile: (916) 482-2860
Email: hspacone@thg-sac.com

9.5.    Governing Law.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the conflict of laws provisions thereof.

9.6.    Headings.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

9.7.    Exhibits.  Any and all exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

9.8.    Closing Case.  At such point as the Bankruptcy Court determines, upon a motion of the Plan Agent, and following twenty (20) days' notice and an opportunity for hearing to all

Postconfirmation Recipients, that all pending claims objections, contested matters and adversary proceedings have been resolved, or that one or both of the Chapter 11 Cases need remain open no longer despite the pendency of such objections, matters or proceedings, one or both of the Chapter 11 Cases, as appropriate, may be closed by the terms of a final decree of the Bankruptcy Court, *provided* that such case will be reopened thereafter if necessary in order to facilitate any of the actions contemplated by the terms of this Plan.

9.9.    <u>Expenses</u>.  In the event that any action, motion, contested matter, complaint, answer, counterclaim, cross-claim or other action is filed or taken by the Plan Agent, the Plan Committee or the Reorganized Debtors after the Effective Date either in the Bankruptcy Court or otherwise, in order to enforce or interpret any terms of the Plan or the Confirmation Order, or any order or agreement made in implementation of the Plan, the prevailing party in such matter (as determined by a court of competent jurisdiction) shall be entitled to recover from any opposing party its expenses, including reasonable attorneys' fees and costs, incurred in such matter, provided however, that any such award against the Plan Committee shall be paid by the Reynen Estate or the Bardis Estate as appropriate and under no circumstances shall any individual member of the Plan Committee have any liability for such award.

DATED:  July 30, 2009


___/s/ John D. Reynen_____          ___/s/ Christo Bardis_____
    JOHN D. REYNEN, Debtor                    CHRISTO BARDIS, Debtor

___/s/ Judith M. Reynen_____         ___/s/ Sara Bardis_____
    JUDITH M. REYNEN, Debtor                    SARA BARDIS, Debtor

Approved and submitted by:

MEYERS LAW GROUP, P.C.                    MEEGAN, HANSCHU & KASSENBROCK
Merle C. Meyers, Esq., CA Bar #66849       David M. Meegan, Esq., CA Bar #114549
Edie Walters, Esq. CA Bar #262730
Michele Thompson, CA Bar #241676


                                       By:    ___/s/ David M. Meegan_____
By:    ___/s/  Merle C. Meyers_____          David M. Meegan, Esq.
         Merle C. Meyers, Esq.                       Attorneys for Bardises
         Attorneys for Reynens

As used herein or in the Plan, the following terms have the meanings specified below, unless the context otherwise requires:

1.      Administrative Bar Date shall have the meaning ascribed to it in Section 3.2 of the Plan.

2.      Administrative Expense Claim means any Claim arising before the Effective Date under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estates, any actual and necessary expenses of operating the business of the Estates, all compensation or reimbursement of expenses allowed by the Court under the provisions of Sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Estates under the provisions of Section 1930 of chapter 123 of title 28 of the United States Code, except for Claims that are also Secured Claims.

3.      AKT means AKT Development, Inc.

4.      AKT Secured Claim means the Reynen Secured Claim held by AKT in the approximate amount of $560,000 and secured by a second lien encumbering the El Dorado Property.

5.      Allowed means, with respect to a Claim, any Claim that is neither a Disputed Claim nor a Disallowed Claim, and proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent.  "Allowed Administrative Expense Claim" or "Allowed Claim" shall not include interest on such Administrative Expense Claim or Claim from and after the applicable Petition Date except as expressly specified in the Plan.

6.      Anniversary Date shall have the meaning ascribed to it in Section 5.1 of the Plan.

7.      Assistance Efforts shall have the meaning ascribed to it in Section 7.6 of the Plan.

8.      ATAP means Angelo Tsakopoulos-Asset Preservation.

9.      ATAP Secured Claim means the Bardis Secured Claim held by ATAP in the approximate amount of $6,954,000 and secured by a lien encumbering the Chew Ranch Interest.

10.     Ballot means each of the voting forms to be distributed with the Plan and the Disclosure Statement to holders of Claims or Interests in Classes that are impaired under the terms of the Plan and are entitled to vote in connection with the solicitation of acceptances of the Plan.

11.     Bank of Amador means the Bank of Amador, N.A.

12.     Bank of Amador-El Dorado Secured Claim means the Reynen Secured Claim held by Bank of Amador in the approximate amount of $862,507 and secured by a first lien encumbering the El Dorado Property.

13.     Bank of Amador-Folsom Secured Claim means the Reynen Secured Claim held by

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA  94104

Bank of Amador in the approximate amount of $508,257 and secured by the Folsom Property.

14.     <u>Bank of America</u> means Bank of America, N.A.

15.     <u>Bank of America-Incline Village Secured Claim</u> means the Reynen Secured Claim held by Bank of America in the approximate amount of $4,761,033 and secured by the Incline Village Property.

16.     <u>Bank of America-Sacramento Secured Claim</u> means the Reynen Secured Claim held by Bank of America in the approximate amount of $1,499,898 and secured by a second lien encumbering the Sacramento Property.

17.     <u>Bank of West</u> means Bank of the West.

18.     <u>Bank of West-Gold River Secured Claim</u> means the Bardis Secured Claim held by Bank of West by virtue of a perfected writ of attachment to the extent secured by an unavoidable lien encumbering the Gold River Property.

19.     <u>BankFirst</u> means BankFirst, a South Dakota state bank.

20.     <u>BankFirst-Gold River Secured Claim</u> means the Bardis Secured Claim held by BankFirst by virtue of a perfected writ of attachment to the extent secured by an unavoidable lien encumbering the Gold River Property.

21.     <u>BankFirst-Pebble Proceeds Secured Claim</u> means the Bardis Secured Claim held by BankFirst by virtue of a perfected writ of attachment to the extent secured by an unavoidable lien encumbering the Pebble Proceeds.

22.     <u>Bankruptcy Code</u> means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

23.     <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division, or such other court having competent jurisdiction over the Chapter 11 Cases.

24.     <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

25.     <u>Bardis Case</u> means the chapter 11 case of Christo and Sara Bardis, case no. 08-34878, commenced on October 15, 2008, and pending before the Bankruptcy Court.

26.     <u>Bardis Convenience Claim</u> means a Convenience Claim against the Bardis Estate.

27.     <u>Bardis Debtors</u> means, collectively, Christo and Sara Bardis, the debtors-in-possession in the Bardis Case.

28.     <u>Bardis Equity Interest</u> means an Equity Interest in the Bardis Estate.

29.     <u>Bardis Estate</u> means the estate of the Bardis Debtors and all property thereof, as

provided by Section 541 of the Bankruptcy Code.

30.     Bardis Excluded Assets means, collectively, the following assets of the Bardis Estate: (a) all interests of the Bardis Estate in real property, improvements and personal property furnishings located in Kastanitsas, Greece; (b) all partnership interests of the Bardis Estate in C&S Partnership, LLC, a California limited liability company; (c) all interests of the Bardis Estate in household goods, vehicles, jewelry, artwork, clothing and other necessary and reasonable (as agreed upon between the Plan Agent and the Bardis Debtors or, in the absence of such agreement, by the Bankruptcy Court) personal items of the Bardis Estate, including without limitation all property determined by the Bankruptcy Court to be exempt property; (d) any private club memberships owned by the Bardis Estate as of the Bardis Petition Date; and (e) the Gold River Property.

31.     Bardis Nonclassified Priority Claim means a Nonclassified Priority Claim against the Bardis Estate.

32.     Bardis Petition means the voluntary petition filed by the Bardis Debtors with the Bankruptcy Court in order to commence the Bardis Case on October 15, 2008.

33.     Bardis Priority Claim means a Priority Claim against the Bardis Estate.

34.     Bardis Sale Period means the time period during which the Bardis Debtors shall assist the Plan Agent in the marketing and sale of property of the Bardis Estate, other than the Bardis Excluded Assets, as part of the Bardis Debtors' Assistance Efforts, which time period shall commence on the Effective Date and shall terminate on March 31, 2010, *provided* that such time period may be extended beyond March 31, 2010 with the agreement of both the Plan Agent and the Bardis Debtors.  Absent such agreement, the Bardis Debtors' obligation to assist in such marketing and sale efforts shall cease as of March 31, 2010.

35.     Bardis Secured Claim means a Secured Claim against property of the Bardis Estate.

36.     Bardis Tax Incentives means the Tax Refund Incentives described in Section 7.7.3.2 of the Plan.

37.     Bardis Tax Refund means any tax refunds received by the Bardis Estate and arising from the Bardis Tax Returns.

38.     Bardis Tax Returns means all tax returns, amended tax returns and claims for refund that can be reasonably asserted on behalf of the Bardis Estate for any period.

39.     Bardis Unsecured Claim means an Unsecured Claim against the Bardis Estate.

40.     Broomieside Property means real property known as Broomieside Farms, consisting of certain parcels of land in Sutter County, California and designated by said county as Assessor Parcel Nos. 24-060-003; 24-060-004; 24-060-005; 24-060-009; 24-040-005, 24-040-006 ptn; 24-040-011; 24-050-001; 24-050-002; 24-050-003; 24-050-004; 24-060-001; 24-060-011; 24-040-013; 24-040-008; 24-040-007; and 24-040-006 ptn.

41.     Buildco means, collectively, R&B and Newco.

42.     Buildco Budget means that certain budget for the projected operations of Buildco,

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

together with attachments thereto, that is enclosed as Exhibit "A" in a letter dated April 9, 2009 from the Reynen Debtors' counsel to the Committee's counsel, which budget and attachments shall not be disclosed to any person other than the Debtor Group, the Reorganized Debtors, the Committee, the Plan Committee and Buildco, and their respective professionals.

43. <u>Business Day</u> means any day on which commercial banks are generally open for business in Sacramento, California, other than a Saturday, Sunday or legal holiday in the State of California.

44. <u>Cash</u> means the legal tender of the United States of America.

45. <u>CBT</u> means California Bank & Trust, N.A.

46. <u>CBT Secured Claim</u> means the Reynen Secured Claim held by CBT in the approximate amount of $106,894 and secured by the Oak Court Property.

47. <u>Chapter 11 Cases</u> means, collectively, the Reynen Case and the Bardis Case.

48. <u>Chase</u> means Chase Financial Bank, N.A.

49. <u>Chase Secured Claim</u> means the Reynen Secured Claim held by Chase in the approximate amount of $63,000 and secured by the Mercedes Vehicle.

50. <u>Chew Ranch Interest</u> means any all interests of the Bardis Estate in Chew Ranch, LLC, a limited liability company.

51. <u>Claim</u> means (a) any right to payment from one of the Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from one of the Estates, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or (c) any claim as defined by the provisions of Section 101(5) of the Bankruptcy Code.

52. <u>Claim Reduction Table</u> means the following table:

| Deficiency Reduction Amt | Cumulative Deficiency Reduction | % Paid | Dollars in Thousands | | |
|---|---|---|---|---|---|
| | | | Dollar Amount Range | Step Incentive | Cumulative Incentive |
| First $10,000 | $10,000 | 0.00% | $0 | $ - | $ - |
| Next 15,000 | 25,000 | 1.00% | 0 to 150 | 150 | 150 |
| Next 25,000 | 50,000 | 1.50% | 0 to 375 | 375 | 525 |
| Next 25,000 | 75,000 | 2.25% | 0 to 563 | 563 | 1,088 |
| Next 25,000 | 100,000 | 3.00% | 0 to 750 | 750 | 1,838 |
| Next 25,000 | 125,000 | 4.50% | 0 to 1,125 | 1,125 | 2,963 |
| Next 25,000 | 150,000 | 6.00% | 0 to 1,500 | 1,500 | 4,463 |

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

53.    Claim Reduction Incentives shall have the meaning ascribed to it in Section 7.7.2 of the Plan.

54.    Claimant means a person asserting a Claim against any of the Debtors or either of the Estates.

55.    Class means a category of holders of Claims or Interests as established by the terms of Article II of the Plan.

56.    Committee means the Official Committee of Unsecured Creditors appointed in the Reynen Case pursuant to the provisions of Section 1102 of the Bankruptcy Code.

57.    Confirmation Date means the date on which the Bankruptcy Court enters the Confirmation Order.

58.    Confirmation Hearing means the hearing before the Bankruptcy Court held for the purpose of determining whether the Plan will be confirmed by the Bankruptcy Court pursuant to the provisions of Section 1129 of the Bankruptcy Code.

59.    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of Section 1129 of the Bankruptcy Code.

60.    Convenience Claims means any Allowed Unsecured Claim of $2,500.00 or less, and all Allowed Unsecured Claims in excess of such amount whose holders exercise the "opt-in" election set forth in Sections 5.12.2 or 5.13.2 of the Plan, but excluding Claims whose holders exercise the "opt-out" election set forth in Sections 5.12.1 or 5.13.1 of the Plan.

61.    Court means the Bankruptcy Court.

62.    Creditor means a Claimant.

63.    Cure means the distribution of Cash as and to the extent required for the cure and assumption of an unexpired executory contract pursuant to the provisions of Section 365(b) of the Bankruptcy Code, or for the cure and reinstatement of a secured obligation pursuant to the provisions of Section 1124(2) of the Bankruptcy Code.

64.    Debtor Group means, collectively, the Reynen Debtors and the Bardis Debtors.

65.    Debtor means any of the Reynen Debtors or the Bardis Debtors.

66.    Default Event shall have the meaning ascribed to it in Section 7.8 of the Plan.

67.    Deficiency Claim Deadline means the thirtieth (30th) calendar day following the Effective Date.

68.    Deficiency Reduction Amount means the aggregate amount of reductions of Claims against both Estates, on an aggregate basis, from the Estimated Liquidation Amount of each identified Claim to the actual Allowed amount of that Claim. Claims that are allowed in amounts greater than their Estimated Liquidation Amounts shall not be included in such calculation, and reductions due to computational errors shall not be included in such calculations. Reductions of

unsecured claim amounts achieved since the Reynen Petition Date, through forbearance agreements or otherwise, shall be included in the determining the difference between the Estimated Liquidation Amounts and the Allowed Claim amounts (i.e., the Estimated Liquidation Case Amounts will not be reduced by the impact of events that have occurred since the Reynen Petition Date, such as the imposition of monetary caps on claims). The measuring date for establishing the Estimated Liquidation Amounts for all claims shall be the Reynen Petition Date. In addition, any increases in claim amounts resulting from avoidance actions prosecuted or settled by the Plan Agent, e.g., pursuant to Section 502(h) of the Bankruptcy Code, shall not be included in determining the allowed amount of a claim, nor shall any reductions in unsecured claims accomplished in connection with settlement of such litigation be included in determining the Deficiency Reduction Amounts. The Reorganized Debtors shall not earn duplicative Claim Reduction Incentives by virtue of the fact that a particular claim is reduced in both the Reynen Case and the Bardis Case. The reduction of claims of affiliates of the Debtor Group shall not be considered in the deficiency reduction calculations.

69. <u>Disallowed Claim</u> means:

i. Any Claim, proof of which was not timely and properly filed and, in the case of a Claim other than an Administrative Expense Claim, which is listed in the Schedules as unliquidated, disputed or contingent, or is not listed in the Schedules; and

ii. Any Claim that has not been allowed by an earlier order of the Court or by the terms of the Plan and as to which the Plan Agent, the Reorganized Debtors or any other party with authority to file objections to Claims, has filed an objection or request for estimation, to the extent that such Claim is disallowed by a Final Order.

70. <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, as approved by the Bankruptcy Court pursuant to the provisions of Section 1125 of the Bankruptcy Code, together with any supplements or amendments thereto approved by the Court.

71. <u>Disputed Claim</u> means any Claim that is not a Disallowed Claim and that has not been allowed by an earlier order of the Court or by the terms of the Plan and as to which the Plan Agent, the Reorganized Debtors or any other party with authority to file objections to Claims, has filed an objection or request for estimation, except to the extent that such objection or request for estimation has been withdrawn or determined by a Final Order.

72. <u>Effective Date</u> means the effective date of the Plan, which shall be a date designated by the Debtor Group, but which date shall be no less than 11 days, and no more than 30 days, following the Confirmation Date or, in the event that effectuation of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than 30 days following expiration of such stay or injunction.

73. <u>El Dorado Property</u> means that certain real property and improvements located at 7007 Karavi Drive, El Dorado Hills, CA 95762.

74. <u>Equity Interests</u> means the rights and interests of the Reynen Debtors or the Bardis Debtors, as the case may be, in and to property of their respective Estates immediately before the Effective Date.

75. <u>Estates</u> means, collectively, the Reynen Estate and the Bardis Estate, or, when used in

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

the singular form, one of such estates as the context requires.

76.    Estimated Liquidation Case Amounts means the amount set forth in the Liquidation Case Schedule as the collective estimate of the Committee and the Debtor Group as to the allowable amount of a particular claim against one or both of the Estates in the event of a chapter 7 liquidation and foreclosure, as applicable.

77.    Excluded Assets means, collectively, the Reynen Excluded Assets and the Bardis Excluded Assets.

78.    Existing Affiliate means an affiliate, as defined in Section 101(2) of the Bankruptcy Code, of the Debtor Group, but only as to persons or entities existing as of the Effective Date and owned, directly or indirectly, by one or both of the Estates as of that date.  The term shall not include any entities in which any of the Debtor Group acquires a direct or indirect ownership or voting interest on or after the Effective Date.

79.    Final Order means an order or judgment of a court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargument or rehearing shall have been waived, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

80.    First Tennessee means First Tennessee Bank, a national association.

81.    First Tennessee Secured Claim means the Bardis Secured Claim held by First Tennessee by virtue of a perfected writ of attachment to the extent secured by an unavoidable lien encumbering the Gold River Property.

82.    Folsom Property means that certain real property and improvements located at 732 Misty Ridge, Folsom, CA 95630.

83.    Gold River Property means that certain real property and improvements located at 11375 Huntington Village Lane, Gold River, CA 95670.

84.    Incline Village Property means that certain real property and improvements located at 517 Fairview, Incline Village, NV 89451.

85.    Interest means Equity Interest.

86.    Internal Revenue Code shall have the meaning ascribed to it in Section 7.6.3 of the Plan.

87.    Initial Interest Payment Date shall have the meaning ascribed to it in Section 5.1 of the Plan.

88.    L.A. Property means that certain real property and improvements located at 7551

63

Coastal View Drive, Los Angeles, CA 90045.

89. <u>Liquidation Case Schedule</u> means that certain schedule of estimated values and liquidation case amounts of the Estates' assets and liabilities that is enclosed as Exhibit "B" in a letter dated April 9, 2009 from the Reynen Debtors' counsel to the Committee's counsel, which schedule shall not be disclosed to any person other than the Debtor Group, the Reorganized Debtors, the Committee, the Plan Committee and Buildco, and their respective professionals.

90. <u>Mather Bardis Property</u> means the Bardis Estate's interest in that certain real property and improvements located at 10630 Mather Blvd., Mather, CA 95655.

91. <u>Mather Reynen Property</u> means the Reynen Estate's interest in that certain real property and improvements located at 10630 Mather Blvd., Mather, CA 95655.

92. <u>McGregor Bardis Property</u> means the Bardis Estate's interest in that certain real property and improvements identified as Assessor's Parcel No. 134-036-008, 134-0360-052, <u>Sacramento</u> County, California, consisting of approximately 360 acres of land on Grantline Road, Elk Grove, CA 95624.

93. <u>McGregor Reynen Property</u> means the Reynen Estate's interest in that certain real property and improvements identified as Assessor's Parcel No. 134-036-008, 134-0360-052, <u>Sacramento</u> County, California, consisting of approximately 360 acres of land on Grantline Road, Elk Grove, CA 95624.

94. <u>Mendocino Property</u> means that certain real property and improvements located at 45134 Brest Road, Mendocino, CA 95460.

95. <u>Mercedes Vehicle</u> means the 2007 Mercedes Benz vehicle owned by the Reynen Estate, V.I.N. WDDNG71X47A012135.

96. <u>Merrill Lynch</u> means Merrill Lynch PHH Mortgage Services.

97. <u>Merrill Lynch Secured Claim</u> means the Reynen Secured Claim held by Merrill Lynch in the approximate amount of $1,014,914 and secured by a first lien encumbering the Sacramento Property.

98. <u>Net Bardis Refunds</u> means Net Refunds arising from the Bardis Tax Returns.

99. <u>Net Refunds</u> means the tax refund amounts paid to the respective Estates on account of the Subject Tax Returns, less any penalties or interest imposed by the taxing authorities; less the professional fees and costs associated with preparing, filing, defending and prosecuting the Subject Tax Returns; less any reduction of the tax refund that was previously received; less any other tax deficiencies, penalties and interest of the Debtors or the Estates, including amounts that are paid by reduction or utilization of any tax refund; and less any fees and costs incurred by the Plan Agent, the Committee or the Plan Committee and the professionals of the Plan Agent, the Plan Committee or the Committee relating to the review, preparation, filing, defending and prosecuting of the Subject Tax Returns. For the avoidance of doubt, the reduction or utilization of any tax refund to pay tax liabilities of the Debtors shall not be treated as an item of Net Refunds, and a tax liability of the Debtors or the Estates that is not satisfied by a tax refund (including taxes in another jurisdiction) shall be treated as a reduction of Net Refunds.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

100. <u>Net Reynen Refunds</u> means Net Refunds arising from the Reynen Tax Returns.

101. <u>Newco</u> means an entity to be formed and owned by the Estates for the purpose of building out projects of the SPEs with funding from the Estates, in the event that R&B ceases to perform that function.

102. <u>Nonclassified Priority Claim</u> means a Priority Claim that is either a Priority Tax Claim or an Administrative Expense Claim.

103. <u>Oak Court Property</u> means that certain real property and improvements located at 397 Maul Oak Court, El Dorado Hills, CA 95762.

104. <u>Offsetting Personal Expenses</u> means, for each of the Estates separately, expenses incurred on or after May 1, 2009 and prior to the Effective Date for the personal expenses of the Debtors of that Estate, or for the maintenance, holding costs, or debt service owing with respect to any Excluded Asset of that Estate (including such expenses incurred prior to the Effective Date and paid after the Effective Date, if any, but not including such expenses incurred prior to May 1, 2009, even if paid after May 1, 2009).

105. <u>Pac Capital</u> means Pac Capital, LLC.

106. <u>Pac Capital Bardis Secured Claim</u> means the Bardis Secured Claim held by Pac Capital in the approximate amount of $739,105 and secured by the McGregor Bardis Property.

107. <u>Pac Capital Reynen Secured Claim</u> means the Reynen Secured Claim held by Pac Capital in the approximate amount of $663,210 and secured by the McGregor Reynen Property.

108. <u>Pebble Proceeds</u> means approximately $6,500,000 of funds interpled in the interpleader action entitled *First American Title v. Mid-Coast Realty Advisors, LLC, et al.*, A.P. no. 09-02088, pending in the Bankruptcy Court.

109. <u>Pennsylvania Property</u> means the Reynen Estate's interest in that certain real property and improvements consisting of approximately 284 acres of land in the Hartford Township of Susquehanna County, PA and identified as Assessor's Parcel No. 018-037857_& 018-007633, together with all related personal property located on such property or used by the Reynen Debtors in the operation and maintenance of such property or of any business conducted thereon.

110. <u>Petitions</u> means, collectively, the Reynen Petition and the Bardis Petition.

111. <u>Petition Date</u> means either April 23, 2008 (the date of filing of the Reynen Petition) or October 15, 2008 (the date of filing of the Bardis Petition), as the context requires.

112. <u>Petition Dates</u> means each of the Petition Dates.

113. <u>Plan</u> means this Debtors' First Amended Joint Plan Of Reorganization (Dated May 29, 2009) (including all exhibits and schedules annexed hereto or filed separately), either in its present form or as it may be legally altered, amended or modified from time to time.

114. <u>Plan Agent</u> means the person appointed as plan agent on behalf of the Estates pursuant to Section 7.2 of the Plan.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

115.  <u>Plan Committee</u> means the committee of creditors established pursuant to the provisions of Section 7.5 of the Plan.

116.  <u>PNB</u> means Peoples' National Bank, N.A.

117.  <u>PNB Secured Claim</u> means the Reynen Secured Claim held by PNB in the approximate amount of $392,992 and secured by part or all of the Pennsylvania Property.

118.  <u>Postconfirmation Recipients</u> means the United States Trustee, the Reorganized Debtors, the Plan Committee, the Plan Agent, Buildco, and those parties who, subsequent to the Confirmation Date, file with the Bankruptcy Court and serve upon the parties named above written requests for special notice as provided by the terms of the Plan, *provided*, that any such requesting party may be eliminated from the list of Postconfirmation Recipients from time to time by consent of such party or by order of the Bankruptcy Court on notice to the then-constituted Postconfirmation Recipients, upon a showing that such party no longer holds a Claim in either of the Chapter 11 Cases.

119.  <u>Priority Claim</u> means a Claim entitled to priority treatment under the provisions of Section 507(a) of the Bankruptcy Code.

120.  <u>Priority Tax Claim</u> means a Priority Claim of a governmental unit entitled to priority treatment pursuant to the provisions of Sections 502(i) and 507(a)(8) of the Bankruptcy Code, other than Secured Claims.

121.  <u>*Pro Rata*</u> means, regarding Claims, the ratio of the amount of an Allowed Claim in a particular Class (or designated group of Claims) to the aggregate amount of all Allowed Claims (together with reserves for Disputed Claims) in such Class or designated group.

122.  <u>Professional Fees</u> means a Claim for compensation or reimbursement of expenses earned prior to the Effective Date by a professional retained in either of the Chapter 11 Cases in accordance with the provisions of Sections 327 et seq. of the Bankruptcy Code.

123.  <u>R&B</u> means Reynen & Bardis Communities, Inc. a California corporation owned 50% by the Reynen Estate and 50% by the Bardis Estate.

124.  <u>Reno Property</u> means that certain real property and improvements located at 5600 Ventana Parkway, Reno, NV 89511.

125.  <u>Reorganized Bardises</u> means the Bardis Debtors at all times on or after the Effective Date.

126.  <u>Reorganized Debtors</u> means, collectively, the Reynen Debtors and the Bardis Debtors at all times on and after the Effective Date.

127.  <u>Reorganized Reynens</u> means the Reynen Debtors at all times on or after the Effective Date.

128.  <u>Reynen Case</u> means the chapter 11 case of John and Judith Bardis, case no. 08-25145, commenced on April 23, 2008, and pending before the Bankruptcy Court.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

129.  <u>Reynen Convenience Claim</u> means a Convenience Claim against the Reynen Estate.

130.  <u>Reynen Debtors</u> means, collectively, John and Judith Reynen, the debtors-in-possession in the Reynen Case.

131.  <u>Reynen Equity Interest</u> means an Equity Interest in the Reynen Estate.

132.  <u>Reynen Estate</u> means the estate of the Reynen Debtors and all property thereof, as provided by Section 541 of the Bankruptcy Code.

133.  <u>Reynen Excluded Assets</u> means, collectively, the following assets of the Reynen Estate:  (a) all interests of the Reynen Estate in the Sacramento Property; (b) all interests of the Reynen Estate in the Pennsylvania Property; (c) all interests of the Reynen Estate in household goods, vehicles, jewelry, artwork, clothing and other personal items of the Reynen Estate, including without limitation all property determined by the Bankruptcy Court to be exempt property; and (d) the Mercedes Vehicle.

134.  <u>Reynen Nonclassified Priority Claim</u> means a Nonclassified Priority Claim against the Reynen Estate.

135.  <u>Reynen Petition</u> means the voluntary petition filed by the Reynen Debtors with the Bankruptcy Court in order to commence the Reynen Case on April 23, 2008.

136.  <u>Reynen Priority Claim</u> means a Priority Claim against the Reynen Estate.

137.  <u>Reynen Sale Period</u> means the time period during which the Reynen Debtors shall assist the Plan Agent in the marketing and sale of property of the Reynen Estate, other than the Reynen Excluded Assets, as part of the Reynen Debtors' Assistance Efforts, which time period shall commence on the Effective Date and shall terminate on March 31, 2010, *provided* that such time period may be extended beyond March 31, 2010 with the agreement of both the Plan Agent and the Reynen Debtors.  Absent such agreement, the Reynen Debtors' obligation to assist in such marketing and sale efforts shall cease as of March 31, 2010.

138.  <u>Reynen Secured Claim</u> means a Secured Claim against property of the Reynen Estate.

139.  <u>Reynen Tax Incentives</u> means the Tax Refund Incentives described in Section 7.7.3.1 of the Plan.

140.  <u>Reynen Tax Returns</u> means all tax returns, amended tax returns and claims for refund that can be reasonably asserted on behalf of the Reynen Estate for any period.

141.  <u>Reynen Unsecured Claim</u> means an Unsecured Claim against the Reynen Estate.

142.  <u>Sacramento Property</u> means that certain real property and improvements located at 2400 East Tiffany Way, Sacramento, CA 95818, Assessor's Parcel No. 075-0400-027

143.  <u>Sale Period Compensation</u> shall have the meaning ascribed to it in Section 7.7.1 of the Plan.

144.  <u>Sale Periods</u> means, with respect to each of the Estates, the period of time from the

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
21860_3.DOC

Effective Date until May 31, 2010, as may be extended with the consent of the Plan Committee, the Plan Agent and the Reorganized Reynens or the Reorganized Bardises, as the case may be.

145. Schedule 6.2.1 means the schedule, if any, to be filed and served pursuant to the provisions of Section 6.2.1 of the Plan.

146. Schedules means the schedules of assets and liabilities and the statement of financial affairs filed by the Reynen Debtors or the Bardis Debtors, as the context may require, in the applicable Chapter 11 Case, as required by the provisions of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments or modifications filed with respect thereto.

147. Secured Claim means an Allowed Claim held by any entity to the extent of the value, as set forth in the Plan, as determined by a Final Order of the Court pursuant to Section 506(a) of the Bankruptcy Code, or as agreed upon by such entity and the Plan Agent (subject to any requirement of approval by the Plan Committee set forth in the Plan) of any duly perfected interest in property of either of the Estates validly and enforceably securing such Allowed Claim.

148. Secured Creditor means the holder of a Secured Claim.

149. Silver Oak Bardis Secured Claim means the Bardis Secured Claim held by Silver Oak in the approximate amount of $3,520,000, secured the Silver Oak Partnership Interest.

150. Silver Oak Reynen Secured Claim means the Reynen Secured Claim held by Silver Oak in the approximate amount of $3,520,000, secured the Silver Oak Partnership Interest.

151. Silver Oak means JG Silver Oak, LLC, a limited liability company.

152. Silver Oak Bardis Partnership Interest means the Bardis Estate's interest in RYB JG Silver Oaks, a general partnership.

153. Silver Oak Reynen Partnership Interest means the Reynen Estate's interest in RYB JG Silver Oaks, a general partnership.

154. SPEs means the special purpose entities, primarily limited liability companies but also including R&B and other corporations, owned, directly or indirectly, by the Debtor Group and through which the Debtor Group's real estate development business was operated prior to the Petition Dates.

155. Step Incentive Payment means payment of the Claim Reduction Incentive earned within a particular line and margin identified in the Claim Reduction Table, e.g., payment of the $150,000.00 Step Incentive shown in the Claim Reduction Table for the first $10,000,000 in Deficiency Reduction Amounts.

156. Subject Tax Returns means, collectively, the Reynen Tax Returns and the Bardis Tax Returns.

157. Tax Refund Incentives shall have the meaning ascribed to it in Section 7.7.3 of the Plan.

158. Travelers means Travelers Casualty and Surety Company of America.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

159. <u>Travelers Secured Claim</u> means the Bardis Secured Claim held by Travelers in the alleged amount of $26,018,351.00, to the extent secured by a lien encumbering the Bardis Tax Refund.

160. <u>Triggering Distribution</u> shall have the meaning ascribed to it in Section 7.16 of the Plan.

161. <u>Truckee Property</u> means that certain real property and improvements located at 1087 Martis Landing, Truckee, CA 96161.

162. <u>Unsecured Claim</u> means any Claim that is not a Secured Claim or Priority Claim.

163. <u>US Bank</u> means U.S. Bank National Association.

164. <u>US Bank Secured Claim</u> the Reynen Secured Claim held by US Bank in the approximate amount of $1,580,000, secured by the Broomieside Property.

165. <u>VIP</u> means Village Investment Partners, L.P.

166. <u>VIP Bardis Secured Claim</u> means the Bardis Secured Claim held by VIP, by assignment from KeyBank National Association, in the approximate amount of $4,973,466, secured by the Mather Bardis Property.

167. <u>VIP Reynen Secured Claim</u> means the Reynen Secured Claim held by VIP, by assignment from KeyBank National Association, in the approximate amount of $4,973,466, secured by the Mather Reynen Property.

168. <u>Wachovia</u> means Wachovia Bank, N.A.

169. <u>Wachovia-Gold River Secured Claim</u> means the Bardis Secured Claim held by Wachovia in the approximate amount of $420,144 and secured by the Gold River Property.

170. <u>Wachovia-L.A. Secured Claim</u> means the Bardis Secured Claim held by Wachovia in the approximate amount of $2,366,868 and secured by the L.A. Property.

171. <u>Wallace Property</u> means that certain real property and improvements located at 14 Willet Court, Wallace, CA 95254.

172. <u>Wells</u> means Wells Fargo Home Mortgage.

173. <u>Wells-Mendocino Secured Claim</u> means the Reynen Secured Claim held by Wells in the approximate amount of $2,240,000 and secured by the Mendocino Property.

174. <u>Wells-Reno Secured Claim</u> means the Reynen Secured Claim held by Wells in the approximate amount of $840,000 and secured by the Reno Property.

175. <u>Wells-Truckee Secured Claim</u> means the Reynen Secured Claim held by Wells in the approximate amount of $1,015,000 and secured by the Truckee Property.

176. <u>Wells-Wallace Secured Claim</u> means the Reynen Secured Claim held by Wells in the approximate amount of $381,282 and secured by the Wallace Property.